# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

## APPEAL NO. 25-2173

---

## ROSS CHRISTENSEN,

Plaintiff/Appellant,

v.

## UNION PACIFIC RAILROAD CO.,

Defendant/Appellee.

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

The Honorable Robert F. Rossiter, Jr. – 8:23-CV-00268-RFR-MDN

---

## APPELLEE'S BRIEF

---

Scott P. Moore
Mark J. Goldsmith
Sarah M. Huyck
BAIRD HOLM
1700 Farnam Street, Suite 1500
Omaha, Nebraska 68102
(402) 344-0500

ATTORNEYS FOR APPELLEE

Appellate Case: 25-2173    Page: 1    Date Filed: 10/24/2025 Entry ID: 5571587

# CASE SUMMARY

Appellant Ross Christensen, a Trainman/Conductor for Union Pacific Railroad Co., underwent a Fitness-For-Duty evaluation in March 2015, shortly after suffering an ischemic stroke. The FFD process concluded that Christensen posed an elevated risk of future sudden incapacitation from seizures and resulted in the issuance of several medical restrictions. Under those restrictions, Christensen could not perform the essential functions of his safety-sensitive job, and the restrictions were unable to be accommodated without unduly altering those essential functions.

Christensen pursued claims for disability discrimination under the Americans with Disabilities Act, in the United States District Court for the District of Nebraska. Christensen voluntarily dismissed one of the claims, and the District Court dismissed his remaining "disparate treatment" claim under §12112(a) of the ADA at summary judgment, upon finding that Union Pacific established its "direct threat" defense as a matter of law. Christensen appeals from that Summary Judgment Order. This Court should affirm the District Court's dismissal of Christensen's disparate treatment claim; Union Pacific requests 15 minutes of oral argument.

i

Appellate Case: 25-2173     Page: 2     Date Filed: 10/24/2025 Entry ID: 5571587

# CORPORATE DISCLOSURE STATEMENT

Union Pacific Railroad Company, a Delaware corporation, is a wholly-owned subsidiary of Union Pacific Corporation, a Utah corporation. Union Pacific Corporation is publicly traded on the New York Stock Exchange, and no parent corporation or any publicly-held corporation owns 10% or more of its stock.

ii

Appellate Case: 25-2173    Page: 3    Date Filed: 10/24/2025 Entry ID: 5571587

# TABLE OF CONTENTS

CASE SUMMARY..............................................................................................i

CORPORATE DISCLOSURE STATEMENT..........................................ii

JURISDICTIONAL STATEMENT ......................................................... 1

STATEMENT OF ISSUES ..................................................................... 2

STATEMENT OF THE CASE ................................................................ 4

    I.     PROCEDURAL HISTORY................................................... 4

    II.    FACTUAL OVERVIEW ....................................................... 5

        A.    Christensen's Role at Union Pacific ........................... 5

        B.    Christensen Suffers an Ischemic Stroke ..................... 5

        C.    Union Pacific's FFD Evaluations of Christensen's Future Sudden Incapacitation Risk and Issuance of Medical Restrictions................................................. 7

SUMMARY OF ARGUMENT................................................................ 11

STANDARD OF REVIEW.................................................................... 13

ARGUMENT ....................................................................................... 14

    I.     THE DISTRICT COURT PROPERLY FOUND THAT UNION PACIFIC ESTABLISHED ITS "DIRECT THREAT" DEFENSE AS A MATTER OF LAW. ................ 14

        A.    Union Pacific Conducted an Individualized Assessment of the Safety-Related Risks That Christensen Posed........................................................ 15

        B.    Union Pacific's Issuance of Medical Restrictions Due to Christensen's Future Risk of Sudden Incapacitation From Seizures Was Objectively Reasonable Based on the Medical Evidence............... 18

        C.    The § 1630.2(r) Factors Support Union Pacific's "Direct Threat" Defense. ........................................... 26

Appellate Case: 25-2173    Page: 4    Date Filed: 10/24/2025 Entry ID: 5571587

II.  IN ADDITION TO UNION PACIFIC'S "DIRECT THREAT" DEFENSE, CHRISTENSEN'S ADA DISPARATE TREATMENT CLAIM FAILS AS A MATTER OF LAW ON OTHER GROUNDS. ...................... 29

    A.  Christensen Must Show Intentional Discrimination Under the *McDonnell Douglas* Burden-Shifting Analysis. .......................... 30

    B.  Christensen Could Not Show He Was a "Qualified Individual" Capable of Fully Performing the "Essential Functions" of His Conductor Role. ............ 34

    C.  Christensen Could Not Prove That Union Pacific's Legitimate Workplace Safety Reasons for Issuing the Medical Restrictions Were Mere Pretext for Intentional Discrimination ...................... 39

        1.  Legal Standards ................................................ 40

        2.  Christensen is unable to impugn Union Pacific's legitimate and sincere safety reasons for issuing medical restrictions. ........... 42

        3.  Christensen cannot prove that Union Pacific acted with an intent to discriminate on the basis of disability. ............................................ 43

CONCLUSION .................................................................................. 45

Appellate Case: 25-2173    Page: 5    Date Filed: 10/24/2025 Entry ID: 5571587

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. KAR Global,*
78 F.4th 1031 (8th Cir. 2023) .................................................................. 31

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) .................................................................................. 13

*Anderson v. Norfolk S. Ry. Co.,*
2022 WL 1073581 (3d Cir. 2022) .............................................. 2, 23, 27

*Boston v. TrialCard, Inc.,*
75 F.4th 861 (8th Cir. 2023) ................................................................... 13

*Bragdon v. Abbott,*
524 U.S. 624 (1998) .................................................................................. 23

*Browning v. Liberty Mut. Ins.,*
178 F.3d 1043 (8th Cir. 1999) ................................................................ 37

*Brunckhorst v. City of Oak Park Heights,*
914 F.3d 1177 (8th Cir. 2019) ................................................................ 35

*Burroughs v. City of Springfield,*
163 F.3d 505 (8th Cir. 1998) ...................................................... 2, 18, 19

*Canning v. Creighton Univ.,*
995 F.3d 603 (8th Cir. 2021) .................................................................. 32

*Carillo v. Union Pac. R.R. Co.,*
2024 WL 3861374 (5th Cir. 2024) .............................................. *passim*

*Coleman v. Pennsylvania State Police,*
561 Fed. App'x 138 (3d Cir. 2014) ....................................................... 15

*Corkrean v. Drake Univ.,*
55 F.4th 623 (8th Cir. 2022) .............................................................. 13, 14

Appellate Case: 25-2173    Page: 6    Date Filed: 10/24/2025 Entry ID: 5571587

*Crocker v. Runyon,*
  207 F.3d 314 (6th Cir. 2000)...............................................................41

*Duello v. Buchanan Cnty. Bd. of Sup'rs,*
  628 F.3d 968 (8th Cir. 2010).............................................. 3, 35, 37, 39

*E.E.O.C. v. Beverage Distributors Co.,*
  780 F.3d 1018 (10th Cir. 2015)........................................................19

*E.E.O.C. v. Rexnord Indus., LLC,*
  966 F. Supp. 2d 829 (E.D. Wis. 2013)..............................................36

*EEOC v. Drivers Mgmt., LLC,*
  142 F.4th 1122 (8th Cir. 2025) ................................................ *passim*

*EEOC v. Schneider Nat., Inc.,*
  481 F.3d 507 (7th Cir. 2007)............................................................29

*Equal Emp. Opportunity Comm'n v. Wal-Mart Stores, Inc.,*
  477 F.3d 561 (8th Cir. 2007)...................................................... 14, 15

*Evans v. Coop. Response Ctr., Inc.,*
  996 F.3d 539 (8th Cir. 2021), *cert. denied,* 142 S. Ct. 769
  (Jan. 10, 2022)..................................................................... 31, 34

*Faulkner v. Douglas Cnty., Neb.,*
  906 F.3d 728 (8th Cir. 2018)............................................................32

*Fjelsta v. Zogg Dermatology,*
  488 F.3d 804 (8th Cir. 2007)............................................................32

*Gilbert v. Des Moines Area Cmty. Coll.,*
  495 F.3d 906 (8th Cir. 2007)............................................................14

*Hickman v. Exxon Mobile,*
  2012 WL 9100358 (S.D. Tex. Sept. 27, 2012), *aff'd sub*
  *nom.,* 540 F. App'x 277 (5th Cir. 2013)............................................23

*Higgins v. Union Pac. R.R. Co.,*
  931 F.3d 664 (8th Cir. 2019)............................................................33

Appellate Case: 25-2173     Page: 7     Date Filed: 10/24/2025 Entry ID: 5571587

*Hoback v. City of Chattanooga,*
No. 1:10-CV-74, 2012 WL 3834828 (E.D. Tenn. Sept. 4, 2012).................................................................................36

*Holloway v. Pigman,*
884 F.2d 365 (8th Cir. 1989)...............................................................13

*Huber v. Westar Foods, Inc.,*
139 F.4th 615 (8th Cir. 2025) (en banc) ...........................................44

*Jarvis v. Potter,*
500 F.3d 1113 (10th Cir. 2007)...........................................................19

*Knapp v. Northwestern Univ.,*
101 F.3d 473 (7th Cir. 1996).......................................................28, 29

*Laney v. City of St. Louis, Mo.,*
56 F.4th 1153 (8th Cir. 2023) ............................................................13

*Libel v. Adventure Lands of Am., Inc.,*
482 F.3d 1028 (8th Cir. 2007).............................................................13

*Marzec v. Marsh,*
990 F.2d 393 (8th Cir. 1993)..............................................................31

*Matthews v. Commonwealth Edison Co.,*
128 F.3d 1194 (7th Cir. 1997)............................................................44

*Mayer v. Union Pac. R.R. Co.,*
2025 WL 1827621 (D. Neb. July 2, 2025)..........................................24

*McAllister v. Innovation Ventures, LLC,*
983 F.3d 963 (7th Cir. 2020)..............................................................36

*McCullough v. Univ. of Arkansas for Med. Scis.,*
559 F.3d 855 (8th Cir. 2009)..............................................................31

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792 (1973)....................................................... 30, 31, 32, 33

*McNary v. Schreiber Foods, Inc.,*
535 F.3d 765 (8th Cir. 2008)..............................................................41

Appellate Case: 25-2173     Page: 8     Date Filed: 10/24/2025 Entry ID: 5571587

*Michael v. City of Troy Police Dep't,*
808 F.3d 304 (6th Cir. 2015)................................................ 2, 18, 23, 28

*Mole v. Buckhorn Rubber Prods., Inc.,*
165 F.3d 1212 (8th Cir. 1999)........................................................ 44

*Moritz v. Frontier Airlines, Inc.,*
147 F.3d 784 (8th Cir. 1998)........................................................ 35

*Morriss v. Burlington N. Santa Fe Ry. Co.,*
817 F.3d 1104 (8th Cir. 2016)......................................................... 3

*Moses v. Dassault Falcon Jet-Wilmington Corp.,*
894 F.3d 911 (8th Cir. 2018)........................................................ 35

*Munoz v. Union Pac. R.R. Co.,*
No. 2:21-CV-00186-HL, 2022 WL 4348605 (D. Or. Aug. 9,
2022)................................................................................... 35

*Olsen v. Cap. Region Med. Ctr.,*
713 F.3d 1149 (8th Cir. 2013)..................................................... 3, 32

*Otto v. City of Victoria,*
685 F.3d 755 (8th Cir. 2012)........................................................ 35

*Palmer v. Circuit Court of Cook Cnty.,*
117 F.3d 351 (7th Cir. 1997)........................................................ 38

*Peebles v. Potter,*
354 F.3d 761 (8th Cir. 2004)........................................................ 30

*Perry v. Zoetis, LLC,*
8 F.4th 677 (8th Cir. 2021) ......................................................... 31

*Phillips v. Mathews,*
547 F.3d 905 (8th Cir. 2008)........................................................ 41

*Pontinen v. United States Steel Corp.,*
26 F.4th 401 (7th Cir. 2022) ..................................................... 20, 21

*Power v. Univ. of N.D. Sch. of Law,*
954 F.3d 1047 (8th Cir. 2020)....................................................... 44

Appellate Case: 25-2173     Page: 9     Date Filed: 10/24/2025 Entry ID: 5571587

*Pulczinski v. Trinity Structural Towers, Inc.*,
691 F.3d 996 (8th Cir. 2012)......................................................41

*Raytheon Co. v. Hernandez*,
540 U.S. 52 (2003).................................................................30

*Rizzo v. Children's World Learning Ctrs., Inc.*,
173 F.3d 254 (5th Cir. 1999)....................................................37

*Sanders v. Union Pac. R.R. Co.*,
108 F.4th 1055 (8th Cir. 2024) ..................................... 24, 25, 26

*Schaffhauser v. United Parcel Serv., Inc.*,
794 F.3d 899 (8th Cir. 2015)....................................................41

*Schierhoff v. GlaxonSmithKline Consumer Healthcare, L.P.*,
444 F.3d 961 (8th Cir. 2006)....................................................32

*Smoky Hills Wind Project II, LLC v. City of Independence, Mo.*,
889 F.3d 461 (8th Cir. 2018)....................................................14

*St. Martin v. City of St. Paul*,
680 F.3d 1027 (8th Cir. 2012)..................................................31

*Stern v. St. Anthony's Health Ctr.*,
188 F.3d 276 (7th Cir. 2015)....................................................38

*Tate v. Farmland Indus., Inc.*,
268 F.3d 989 (10th Cir. 2001)..................................................20

*Winters v. Deere & Co.*,
63 F.4th 685 (8th Cir. 2023) ........................................ 3, 34, 40, 45

*Wisbey v. City of Lincoln*,
612 F.3d 667 (8th Cir. 2010), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011)................................................................33

*Withers v. Johnson*,
763 F.3d 998 (8th Cir. 2014)....................................................30

Appellate Case: 25-2173    Page: 10    Date Filed: 10/24/2025 Entry ID: 5571587

*Wurzel v. Whirlpool Corp.*,
   482 F. App'x 1 (6th Cir. 2012)...............................................................35

*Young v. Builders Steel Co.*,
   754 F.3d 573 (8th Cir. 2014).................................................................42

**Statutes**

42 U.S.C. §12111(3) ...............................................................................14

42 U.S.C. § 12112(a) ............................................................................i, 4

42 U.S.C. § 12112(b)(6).............................................................................4

42 U.S.C. § 12112(d)(4)(A)-(B)...............................................................33

42 U.S.C. §12113(b) ...............................................................................14

42 U.S.C. §12201(h) ...............................................................................36

Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ......................i

**Other Authorities**

29 C.F.R. §1630.2(m) ..............................................................................35

29 C.F.R. §1630.2(n) ...............................................................................35

29 C.F.R. §1630.2(r)..........................................................................14, 26

29 C.F.R. § 1630.14(c)..............................................................................33

8th Circuit Rule 25A(a), I.........................................................................46

Fed. R. App. R. Rule 32 and 8th ..............................................................47

Fed. R. Civ. P. 56(a)................................................................................13

Fed. R. Civ. P. 56(c)(2).............................................................................22

Fed. R. Evid. 801 & 802 ..........................................................................22

Appellate Case: 25-2173    Page: 11    Date Filed: 10/24/2025 Entry ID: 5571587

# JURISDICTIONAL STATEMENT

Union Pacific agrees with Christensen's identification of the bases for this Court's jurisdiction over this appeal.

1

Appellate Case: 25-2173    Page: 12    Date Filed: 10/24/2025 Entry ID: 5571587

## STATEMENT OF ISSUES

1.  Did the District Court properly hold that Union Pacific established its "direct threat" defense to Christensen's ADA disparate treatment claim as a matter of law, where Union Pacific issued medical restrictions only after its internal doctors (i) reviewed extensive medical records regarding Christensen's ischemic stroke and potential for future incapacitating seizures, (ii) considered the requirements of Christensen's safety-sensitive train conductor position, and (iii) followed Union Pacific safety policies and protocols based on federal guidelines concerning management of sudden incapacitation risk?

> *Burroughs v. City of Springfield*, 163 F.3d 505 (8th Cir. 1998)
>
> *Carillo v. Union Pac. R.R. Co.*, 2024 WL 3861374 (5th Cir. 2024)
>
> *Michael v. City of Troy Police Dep't*, 808 F.3d 304 (6th Cir. 2015)
>
> *Anderson v. Norfolk S. Ry. Co.*, 2022 WL 1073581 (3d Cir. 2022)

2.  Was summary judgment also appropriate due to Christensen's failure to establish his *prima facie* case, as well as his failure to show that Union Pacific's issuance of medical restrictions was pretextual?

2

*Olsen v. Cap. Region Med. Ctr.*, 713 F.3d 1149 (8th Cir. 2013)

*Morriss v. Burlington N. Santa Fe Ry. Co.*, 817 F.3d 1104 (8th Cir. 2016)

*Duello v. Buchanan Cnty. Bd. of Sup'rs*, 628 F.3d 968 (8th Cir. 2010)

*Winters v. Deere & Co.*, 63 F.4th 685 (8th Cir. 2023)

3

Appellate Case: 25-2173     Page: 14     Date Filed: 10/24/2025 Entry ID: 5571587

# STATEMENT OF THE CASE

## I.   PROCEDURAL HISTORY

Christensen filed his Complaint on June 16, 2023, which included claims under the ADA for disparate treatment disability discrimination under 42 U.S.C. § 12112(a) and disparate treatment unlawful screening/qualification standard under 42 U.S.C. § 12112(b)(6).[1] (Appellant's Appendix ("App.") I:22-24[2]; R. Doc. 1, at 12-14.)  On July 11, 2023, Union Pacific filed its Answer, which included its "direct threat" affirmative defense.  (App. I:50; R. Doc. 6 at 12.)

Following discovery, Union Pacific moved for summary judgment on February 7, 2025.  (R. Doc. 49 at 1-2; R. Doc. 51.)  In its MSJ Order dated May 23, 2025, the District Court granted Union Pacific's motion, finding it had established its "direct threat" defense as a matter of law, and dismissed the case with prejudice.  (Appellant's Addendum "Add." 17; R. Doc. 74 at 16.)  The District Court entered Judgment on the same date.  (Add. 1; R. Doc. 75.)

---

[1] Christensen voluntarily dismissed his § 12112(b)(6) claim during the summary judgment proceedings.  (App. III:584; R. Doc. 61 at 1 n.1.)
[2] Citations to the Appendix are to Volume:Page.

Appellate Case: 25-2173   Page: 15   Date Filed: 10/24/2025 Entry ID: 5571587

Christensen filed his Notice of Appeal on June 11, 2025. (App. VIII:1891-92; R. Doc. 76 at 1-2.)

## II. FACTUAL OVERVIEW

### A. Christensen's Role at Union Pacific

Christensen began working for Union Pacific in July 2004, and he worked for Union Pacific in Provo, Utah as a Trackman/Conductor. (App. I:18; R. Doc. 1 at 8 ¶¶30-31; App. V:960-62; R. Doc. 63-6 at 25:9-27:25.)

The essential job functions of his Trainman/Conductor position were as follows: (1) train operation and movement; (2) perform switching operations; (3) conduct train and equipment inspections; (4) communicate and report information concerning train movements and work orders; (5) interpret signals; (6) practice safe work habits; (7) customer service; and (8) attendance. (App. I:90-91; R. Doc. 50-1 at 2-3.) Christensen admits that his position was safety-sensitive, that he had a duty to his fellow employees regarding safety, and that if a locomotive hits a person or equipment, it could cause serious damage, injury, or death. (App. V:965-66; R. Doc. 63-6 at 30:6-31:12; App. V:980; R. Doc. 63-6 at 45:12-14.)

### B. Christensen Suffers an Ischemic Stroke

On January 9, 2015, Christensen experienced an ischemic stroke with subsequent intracerebral hemorrhage ("ischemic stroke") while off

5

duty, which caused him to lose consciousness.  (App. V:983-84; R. Doc. 63-6 at 48:5-9, 49:21-22; App. III:526; R. Doc. 51-6 at 2; App. III:545-46; R. Doc. 51-7 at 15-16.)  In the wake of his stroke, he was diagnosed with severe aphasia, right hemiparesis, and new atrial fibrillation.  (App. II:359; R. Doc. 51-3 at 2.)

On January 13, 2015, Christensen's treating physician, Dr. Kevin Call, cleared him to return to work by the end of February 2015.  (App. IV:696-97; R. Doc. 63-1 at 39:2-40:12; App. V:992-93; R. Doc. 63-6 at 57:9-58:7.)  In doing so, however, Dr. Call did not consult the requirements or essential functions of Christensen's Trainman/Conductor position at Union Pacific.  (App. IV:708; R. Doc. 63-1 at 51:11-20; App. V:993; R. Doc. 63-6 at 58:8-21.)  Moreover, Dr. Call did not take into consideration whether—as a result of his recent ischemic stroke—Christensen was more likely to suffer another such stroke or seizures in the future, which could pose a threat of sudden incapacitation.  (App. IV:708-09; R. Doc. 63-1 at 51:21-52:8.)  Thereafter, Christensen was cleared to return to work by other treating physicians.  (App. III:427; R. Doc. 51-5 at 61 (UP000099); App. III:444-46; R. Doc. 51-5 at 78-80 (UP000116-18); App. III:448; R. Doc. 51-5 at 82 (UP000120).)  However, like Dr. Call, there is

6

no evidence that any of them did so after considering the essential functions of Christensen's Trainman/Conductor position or after evaluating his risk for future sudden incapacitation. (App. V:1051-53; R. Doc. 63-6 at 116:18-118:4.)

### C. Union Pacific's FFD Evaluations of Christensen's Future Sudden Incapacitation Risk and Issuance of Medical Restrictions

In March 2015, before allowing Christensen to return to work, Union Pacific's internal Health & Medical Services Department ("HMS") initiated an FFD evaluation process, as a stroke is a reportable health event under Union Pacific's medical safety policies, which require such an evaluation. (App. III:430-31; R. Doc. 51-5 at 64-65 (UP000102-03); App. III:544; R. Doc. 51-7 at 14 (UP000209); App. I:38; R. Doc. 1-1 at 13.) Christensen was also asked to submit extensive medical records to HMS as part of the FFD evaluation process, with which he complied. (App. III:545; R. Doc. 51-7 at 15 (UP000210); App. III:575-76; R. Doc. 51-8 at 2-3 (UP000102-03).)

The 2015 FFD evaluation was primarily conducted by Union Pacific Associate Medical Director Dr. John Charbonneau, with oversight by the company's Chief Medical Officer, Dr. John Holland. (App. III:544; R. Doc.

7

51-7 at 14 (UP000209).) Under Union Pacific's medical safety policies in place at the time, Dr. Charbonneau determined that Christensen would need medical restrictions for at least one year due to his risk of sudden incapacitation. (App. III:432-35; R. Doc. 51-5 at 66-69 (UP000104-07).) Union Pacific determined that those medical restrictions could not be accommodated to allow Christensen to return to his Trainman/Conductor position. (App. III:438; R. Doc. 51-5 at 72 (UP000110).) Christensen was told he could seek reevaluation of the restrictions after a year following his ischemic stroke. (App. III:433; R. Doc. 51-5 at 67 (UP000105).)

In or around September 2015, Union Pacific changed its internal medical risk management policies to incorporate the provisions of the 2014 version of the Federal Motor Carrier Safety Administration's ("FMCSA") Medical Examiner's Handbook ("Handbook"). (App. III:529-30; R. Doc. 51-6 at 5-6 (UP000159-60.)

The FMCSA is an agency of the U.S. Department of Transportation ("DOT") that aims to reduce crashes involving large vehicles and buses, and it has developed medical guidelines for commercial vehicle drivers. (App. II:101; R. Doc. 50-2 at 9 (RCHRISTENSEN0000041).) The FMCSA Handbook provides evidence-based recommendations and guidelines to

8

assist medical examiners in determining whether an individual is medically qualified and safe to drive. (App. II:144; R. Doc. 50-2 at 52 (RCHRISTENSEN0000084).) It directs medical examiners to disqualify a driver who "has a medical condition that endangers the health and safety of the driver and the public." (App. II:141; R. Doc. 50-2 at 49 (RCHRISTENSEN0000081).) The Handbook specifically addresses the risk of future seizures for strokes and specifically discusses the recommended waiting period and decision-making analysis with respect to an employee who suffers an ischemic stroke like Christensen had. (App. II:256-57; R. Doc. 50-2 at 164-65 (RCHRISTENSEN00000196-97).) The Handbook recommends a waiting period of five years if the employee is at risk for future seizures. (*Id.*)

Christensen sought reevaluation of his medical restrictions after a year, which FFD evaluation process concluded in March 2016. (App. III:526-30; R. Doc. 51-6 at 2-6 (UP000156-60); App. III:535-42; R. Doc. 51-7 at 5-12 (UP000200-07).) In light of updated medical records provided by Christensen and in light of Union Pacific's then-operative medical safety rules utilizing the content in the FMCSA Handbook, Dr. Holland concluded that Christensen continued to have "an unacceptable risk for

9

future seizure related to his history of stroke and intracerebral hemorrhage" in January 2015. (App. III:528; R. Doc. 51-6 at 4 (UP000158).) As a result, he determined that Christensen's medical restrictions should remain in place for at least five years following his ischemic stroke (until January 2020). (App. III:529; R. Doc. 51-6 at 5 (UP000159).) Dr. Holland documented his assessment of Christensen's medical and vocational circumstances in a detailed memo. (App. III:526-30; R. Doc. 51-6 at 2-6 (UP000156-60).)

Christensen sought early review of his medical restrictions in 2018, but failed to provide all requested updated neurological information. (App. III:532-34; R. Doc. 51-7 at 2-4 (UP000197-99); App. V:1040-46; R. Doc. 63-6 at 105:10-111:7.) Ultimately, Dr. Charbonneau determined that there was no basis for removing the medical restrictions previously issued by Dr. Holland for a period of five years from the date of his stroke. (App. III:532-33; R. Doc. 51-7 at 2-3 (UP000197-98); App. III:583; R. Doc. 51-11.)

Christensen alleges that he submitted information to Union Pacific in January 2020 to seek reevaluation of the medical restrictions, but Union Pacific has no record of having received such a request from him.

10

(App. III:532-73; R. Doc. 51-7 at 2-43 (UP000197-238).)

In 2016, Union Pacific's medical risk management policies required medical restrictions if an employee's sudden incapacitation risk exceeded 1%. (App. II:364; R. Doc. 51-3 at 7; App. III:528; R. Doc. 51-6 at 4 (UP000158).) And in seeking summary judgment, Union Pacific presented expert medical evidence from Dr. Pierre Fayad, who—based on his review of Christensen's medical records regarding the nature and location of his 2015 stroke—estimated that Christensen's future risk of a sudden incapacitation event in the five years following his ischemic stroke to be greater than 5%. (App. II:364; R. Doc. 51-3 at 7.)

## SUMMARY OF ARGUMENT

The District Court properly determined that Union Pacific established its "direct threat" defense as a matter of law, which negated any potential liability on Christensen's disparate treatment disability discrimination claim. In issuing medical restrictions to Christensen, Union Pacific's internal medical personnel carefully considered medical and job-requirement information specific to Christensen, in light of Union Pacific's safety risk management policies and federal safety guidelines underlying those policies. In so doing, Union Pacific's medical

11

personnel reached an objectively reasonable conclusion that Christensen posed an unacceptable risk of future sudden incapacitation from seizures (with potentially catastrophic consequences) for a five-year period if he continued as a railroad conductor. This determination process satisfied all operative legal standards for the "direct threat" defense to ADA liability.

In addition, on the record before the Court, no reasonable jury could have found that Christensen could establish all the requisite elements of an intentional disability discrimination claim. Christensen failed to make out a *prima facie* case of discrimination, and even had he been able to do so, he proffered no credible evidence capable of demonstrating that Union Pacific's safety-related reasons for issuing the medical restrictions were pretextual, and instead motived by intentional disability discrimination.

Because Christensen's one cause of action was riddled with so many material shortcomings, no reasonable jury could have found for Christensen on the disability disparate treatment claim, thereby warranting judgment as a matter of law for Union Pacific.

12

## STANDARD OF REVIEW

This Court reviews *de novo* grants of summary judgment. *Boston v. TrialCard, Inc.*, 75 F.4th 861, 867 (8th Cir. 2023). "'Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.'" *Corkrean v. Drake Univ.*, 55 F.4th 623 (8th Cir. 2022) (quoting *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1033 (8th Cir. 2007)); *see also Laney v. City of St. Louis, Mo.*, 56 F.4th 1153, 1155 (8th Cir. 2023); Fed. R. Civ. P. 56(a). In determining whether there is a genuine issue of material fact, "the 'mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law.'" *Corkrean*, 55 F.4th at 630 (quoting *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (characterizing a genuine factual issue as one that "can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party").

13

Appellate Case: 25-2173    Page: 24    Date Filed: 10/24/2025 Entry ID: 5571587

"[T]his Court 'may affirm a district court's grant of summary judgment on any basis supported by the record.'" *Corkrean*, 55 F.4th at 630 (quoting *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 913 (8th Cir. 2007)). That may include a basis not considered or discussed in the underlying district court ruling. *Smoky Hills Wind Project II, LLC v. City of Independence, Mo.*, 889 F.3d 461, 468 (8th Cir. 2018).

## ARGUMENT

### I. THE DISTRICT COURT PROPERLY FOUND THAT UNION PACIFIC ESTABLISHED ITS "DIRECT THREAT" DEFENSE AS A MATTER OF LAW.

An employer is entitled to summary judgment if the employee posed a "direct threat" to himself or others. *Equal Emp. Opportunity Comm'n v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 571 (8th Cir. 2007) (citing 42 U.S.C. §12113(b)); *see also* 42 U.S.C. §12111(3). To establish its direct threat defense, Union Pacific must show it made (1) an individualized assessment and (2) a reasonable medical judgment relying on current medical knowledge or the best available objective evidence. 29 C.F.R. §1630.2(r). The undisputed evidence confirms that Union Pacific satisfied all relevant factors.

14

**A. Union Pacific Conducted an Individualized Assessment of the Safety-Related Risks That Christensen Posed.**

An individualized assessment does not require an independent medical examination or even that the company doctor examine the employee directly. *Coleman v. Pennsylvania State Police*, 561 Fed. App'x 138, 145 (3d Cir. 2014); *see also Carillo v. Union Pacific R.R. Co.*, 2024 WL 3861374, at *5 (5th Cir. Aug. 19, 2024) ("The fact that Union Pacific's doctors did not personally meet with [plaintiff employee] also does not undermine their conclusions; these doctors relied on extensive medical reports submitted by the doctors who did. Moreover, the direct threat defense does not require a company to mine all sources of evidence."); *Id.* at *4 n.2 (noting that direct threat "precedents [do not] require than an employer have its own doctors meet with or examine an employee before taking appropriate action"). What is most essential is that the employer considers the particular employee's circumstances in some meaningful manner, rather than relying on mere stereotypical, categorical assumptions. *Wal-Mart*, 477 F.3d at 571.

Here, Union Pacific's FFD evaluation of Christensen was appropriately individualized. The Medical Comments History created by

15

Union Pacific's HMS Department details how uniquely tailored to Christensen the process was. (App. III:532-73; R. Doc. 51-7 at 2-43 (UP000197-238).) It describes each step in the review, showing the many touchpoints between Christensen and Union Pacific's HMS staff. It also confirms Dr. Holland's review and analysis of the personal medical records submitted by Christensen in reaching his ultimate medical judgments. Dr. Holland additionally drafted a five-page memorandum summarizing Christensen's particular medical issues and the associated safety risks related to his employment. Nothing about the process suggests that Dr. Holland based those medical judgments on abstract stereotypes instead of information related specifically to Christensen, his health circumstances, and the future safety risks posed by those circumstances, in light of the specifics of his safety-sensitive job as a Trainman/Conductor.

These facts stand in stark contrast to *EEOC v. Drivers Mgmt., LLC*, 142 F.4th 1122 (8th Cir. 2025), on which Christensen heavily relies. (*See, e.g.,* App. Br. at 31, 35, 42, 43-44, 46-47.)[3] Christensen's reliance is procedurally misplaced, as *Drivers Mgmt.* involves a post-trial appeal.

---

[3] NOTE: Christensen's Brief refers to this case as "*Werner.*"

16

*Id.* at 1127.  The focal point of the disability discrimination claim was also markedly different, as it involved the plaintiff's deafness—a present physiological impairment that itself constitutes an actual disability, *id.* at 1128—as opposed to Christensen's future risk of potential sudden incapacitation due to a serious, but ephemeral, physiological event (his ischemic stroke) that he admits was itself not an actual disability.  (App. III:584; R. Doc. 61 at 1 n.1; App. V:1020; R. Doc. 63-6 at 85:3-4.)  Most critically, in *Drivers Mgmt.*, this Court found the lower court's rejection of the employer's "direct threat" defense appropriate due to a lack of individual assessment because the employer *at most* made a few tepid inquiries about general industry studies of deaf commercial drivers, but considered *zero* medical or performance records or other information specific to the plaintiff himself.  *Id.* at 1133.  This stands in vivid contrast to the circumstances here, where it is undisputed that Union Pacific issued medical restrictions for sudden incapacitation risk to Christensen, only after undertaking a disciplined and documented FFD evaluation process that entailed thoughtful consideration of Christensen's personal medical records concerning the type and location of his stroke (and its associated risks of future seizures) and information concerning the

17

specific functional requirements of Christensen's particular safety sensitive position. As such, *Drivers Mgmt.* is wholly inapposite to this case, and in no way constitutes a *de facto* bar on summary judgment in favor of an employer on a "direct threat" defense, as Christensen seems to insinuate.[4]

> **B.** **Union Pacific's Issuance of Medical Restrictions Due to Christensen's Future Risk of Sudden Incapacitation From Seizures Was Objectively Reasonable Based on the Medical Evidence.**

An employer's direct threat determination should be "appropriately based on objective evidence and reasonable medical judgment." *Burroughs v. City of Springfield*, 163 F.3d 505, 508 (8th Cir. 1998). An employer need not show its direct threat decision was "correct," only that it relied "on an 'objectively reasonable' opinion." *Michael v. City of Troy Police Dep't*, 808

---

[4] Christensen is equally misguided in contending that Union Pacific did not conduct an individual assessment here because it did not order a functional capacity examination or neurocognitive testing. (*See* App. Br. at 19, 47.) Christensen cites to no legal authority establishing any such requirement, and he conveniently ignores the basic proposition that "the direct threat defense does not require a company to mine all [theoretical] sources of evidence." *Carillo v. Union Pac. R.R. Co.*, 2024 WL 3861374, at *4 (5th Cir. Aug. 19, 2024). The ADA does not purport to granularly micromanage how Union Pacific performs its FFD evaluations and manages its internal medical safety risk. And it certainly does not deputize or otherwise empower plaintiffs like Christensen to do so.

18

F.3d 304, 309 (6th Cir. 2015). Proof of an "actual threat" is "unnecessary," as an employer avoids liability if it "reasonably believed the job would entail a direct threat." *E.E.O.C. v. Beverage Distributors Co.*, 780 F.3d 1018, 1021 (10th Cir. 2015). Indeed, the fact-finder "does not independently assess whether it believes that the employee posed a direct threat" because its "role is to determine whether the employer's decision was objectively reasonable." *Jarvis v. Potter,* 500 F.3d 1113, 1122 (10th Cir. 2007).

Union Pacific's decision here was objectively reasonable; Union Pacific has what this Court required in *Burroughs.* First, it relied on "objective medical evidence." Dr. Holland is an occupational medical doctor with many years of experience evaluating the fitness of railroad workers. He considered substantial medical-record information regarding Christensen for the pertinent timeframe, including the results of CT scans, follow-up care records, and new medical evaluations occurring in 2016. (App. III:526-30; R. Doc. 51-6 at 2-6 (UP000156-60).) He applied his own understanding of Christensen's risks of future sudden incapacitation based on his decades of experience as an occupational physician, his understanding of the rigors and safety implications of

19

Trackman/Conductor jobs at Union Pacific, and his knowledge of and duty to enforce the company's mitigation threshold for future sudden incapacitation safety risks. The ADA simply does not require more than that.

Moreover, accurately predicting or quantifying Christensen's seizure risk is nearly impossible, as agreed to by Christensen's treating physician, Dr. Call. Given the complexity of forecasting the potential risk of future seizures, Union Pacific's reliance on the FMCSA Handbook to assess difficult questions of future sudden incapacitation risk from an ischemic stroke was all the more reasonable. The "views of an agency such as DOT implementing a regulatory scheme designed to ensure the safety of our nation's highways constitute a body of experience and informed judgment to which employers may properly resort for guidance." *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 994 (10th Cir. 2001) (quotation omitted). The FMCSA Handbook is among the "best available objective evidence" to evaluate that risk even when applied outside the trucking industry. *Pontinen v. United States Steel Corp.*, 26 F.4th 401, 406 (7th Cir. 2022). In *Pontinen*, a steel plant relied on its in-house physician's application of the Handbook to an employee with

20

Appellate Case: 25-2173    Page: 31    Date Filed: 10/24/2025    Entry ID: 5571587

epilepsy, and giving more weight to one particular source like the Handbook was deemed within the physician's "reasonable medical judgment." *Id.*

Relying on FMCSA medical guidance to safeguard railways is no less valid than highways, given that it informs critical decisions about an employee's "medical condition that endangers the health and safety of the driver and the public." (App. II:141; R. Doc. 50-2 at 49 (RCHRISTENSEN0000081).) FMCSA guidance is an especially compelling source of medical information given that the Federal Railroad Administration has provided railroads with no centralized medical standards for neurological conditions, and has "encouraged railroad companies to look to regulations governing other transportation regulatory bodies." *Carillo*, 2024 WL 3861374, at *5. The Fifth Circuit recently summed it up quite aptly in rejecting a similar challenge to Union Pacific's use of the FMCSA Handbook:

> Nor does it matter that Union Pacific looked partly to guidance documents from the Federal Motor Carriers Safety Administration ("FMSCA") that were not peer-reviewed and were removed from the FMCSA website. It is undisputed on this record that the guidance documents were evidence-based and developed through a consensus of medical experts.…

21

> Nor is Union Pacific prohibited from consulting the guidance documents simply because they were created for vehicle carriers; [Plaintiff] offers no reason why a railroad could not consult the documents more broadly. And after failing to adopt its own comprehensive standards, the Federal Railroad Administration encouraged railroad companies to look to regulations governing other transportation regulatory bodies. Union Pacific merely followed this instruction.

*Id.* (internal citations omitted).[5]

While Christensen disagrees with the ultimate correctness of Dr. Holland's medical risk management judgment, as explained above, that is not the appropriate inquiry under the governing law, as the Fifth Circuit very recently reiterated. *See id.* at *3 ("The direct threat defense protects the employer even if the employer does not reach the correct diagnosis."). At best, Christensen offers no rebuttal other than dubious

---

[5] In attempting to impugn Union Pacific's use of the FMCSA Handbook, Christensen also seeks to invoke expert testimony given in a wholly distinct case. (*See* App. Br. at 22 & App. VII:1448-515; R. Doc. 63-11 at 2-69.) Christensen, however, proffers no explanation as to how such testimony is not inadmissible hearsay for purposes of this matter, and it should not be considered in determining the propriety of summary judgment for Union Pacific here. *See* Fed. R. Civ. P. 56(c)(2) (indicating it is a proper basis for objection at summary judgment if evidence could not be presented in an admissible form at trial); *see also* Fed. R. Evid. 801 & 802 (covering inadmissible hearsay).

Appellate Case: 25-2173     Page: 33     Date Filed: 10/24/2025 Entry ID: 5571587

releases from his treating physicians to return to work[6]; such releases are not competent evidence that Dr. Holland failed to exercise reasonable medical judgment here. *See id.* at \*5 ("[T]he direct threat analysis asks whether the employer made a 'reasonable medical judgment,' not whether every examining doctor came to the same exactly conclusion." (internal citation omitted)); *see also Michael*, 808 F.3d at 307 ("A medical opinion may conflict with other medical opinions and yet be objectively reasonable." (citing *Bragdon v. Abbott*, 524 U.S. 624, 650 (1998)). No reasonable jury could conclude on this record that Dr. Holland failed to gather and consider reasonable and objective medical information for

---

[6] Christensen fails to point to any evidence that any of his treating physicians considered (or even knew) the specific essential functions of his highly safety-sensitive position or in any way evaluated his risk of sudden incapacitation from future seizures in making their return-to-work recommendations. *See Hickman v. Exxon Mobile*, 2012 WL 9100358, at \*9 (S.D. Tex. Sept. 27, 2012) ("The ADA does not require [an employer] to place its employees and the public at risk because an external physician based his work release on an incomplete set of facts."), *aff'd sub nom.*, 540 F. App'x 277 (5th Cir. 2013). And in any event, Union Pacific is not obliged to reflexively defer its safety risk management to such outside physicians. *Accord Anderson v. Norfolk S. Ry. Co.,* 2022 WL 1073581, at \* 2–3 (3d Cir. 2022) (holding that plaintiff could not prevail by "nitpicking" medical officer's decision that a heart condition presented an unacceptable safety risk, despite a return-to-work release from the plaintiff's cardiologist).

23

purposes of his FFD decision-making.[7]

While Christensen accuses Union Pacific of having a "one size fits all" approach to its FFD evaluations (*see, e.g.,* App. Br. at 4-5), Christensen himself seems to have a "one case fits (and wins) all" mentality with respect to this Court's recent decision in *Sanders v. Union Pac. R.R. Co.*, 108 F.4th 1055 (8th Cir. 2024). As was the case with *Drivers Mgmt.*, however, Christensen's fixated overreliance on *Sanders* is misguided, as it is readily distinguishable from the instant matter.

For starters, as with *Drivers Mgmt.*, *Sanders* is a post-trial ruling. *Id.* at 1059. The plaintiff in *Sanders* was a foreman general who oversaw mechanics, *id.*, not a train conductor like Christensen, so the safety-risk dimensions of the "direct threat" determination were markedly different. Moreover, the alleged disability and the central fighting issues were

---

[7] Christensen's attempted reliance here on *Mayer v. Union Pac. R.R. Co.*, 2025 WL 1827621 (D. Neb. July 2, 2025), is extremely puzzling. The *Mayer* court expressly distinguished the very different facts and circumstances of that case (as it pertained to the "direct threat" issue) from Christensen's case. Whereas the plaintiff in *Mayer* had proffered expert medical testimony and pointed to a more recent medical publication that called into question the relevant portion of the FMCSA Handbook, the court noted that Christensen had offered no such contradicting medical evidence, but had instead impermissibly relied only on "abstract disagreement with Union Pacific's medical judgment." *Id. at* \*15.

24

strikingly dissimilar.  The plaintiff in *Sanders* was restricted based on a present physical impairment (suspected cardiac condition) that arguably limited his ability to perform certain strenuous labor (like lifting 86-lb. knuckles) essential to his position.  *Id.* at 1061.  The "direct threat" issue was also centered on the unusual issue of whether Union Pacific reasonably refused the employee's accommodation request to take a different form of stress test as part of the FFD evaluation process, because of a knee issue.  *Id.* at 1062.  The plaintiff offered expert testimony attacking the medical reasonableness of requiring the plaintiff to do a treadmill-based stress test under those specific circumstances, and this Court held the jury could have credited such testimony in rejecting Union Pacific's "direct threat" defense.  *Id.*

The circumstances in *Sanders* bear no discernible relationship to this matter, where Christensen was restricted from a safety-critical position, not because of a present physiological impairment, but because of the risk of future potential sudden incapacitation.  Furthermore, the restriction decision here was based on the application of medical judgment to medical records and federal safety guidelines that went unchallenged by any expert medical testimony whatsoever.  Moreover,

25

the treating physician on whom Christensen most substantially relies (Dr. Call) was not familiar with the specific essential requirements of Christensen's role when he said he could return to work after a matter of weeks, and quite remarkably, Christensen himself overtly contradicts Dr. Call's misinformed judgment by agreeing he should have been restricted for a least a year following his stroke. (App. IV:708; R. Doc. 63-1 at 51:11-20; App. V:993; R. Doc. 63-6 at 58:8-21; App. III:584; R. Doc. 61 at 1 n.2.) As with *Drivers Mgmt.*, *Sanders* in no way established (or even insinuates) some broad-based prohibition against finding an employer's "direct threat" defense established as a matter of law.

## C. The § 1630.2(r) Factors Support Union Pacific's "Direct Threat" Defense.

The legitimacy of Dr. Holland's decision-making is also supported—individually and collectively—by factors that courts often consider in making "direct threat" determinations: (1) the duration of the risk; (2) the nature and severity of the harm; (3) the likelihood that the harm will occur; and (4) the imminence of the harm. 29 C.F.R. §1630.2(r).

As for the duration of the risk, the 2014 FMCSA Handbook, on which Union Pacific's medical standards are based, advises that an

26

ischemic stroke is linked to an unacceptable risk of incapacitating seizures for five years. (App. II:256-57; R. Doc. 50-2 at 164-65 (RCHRISTENSEN00000196-97).) Dr. Fayad, a UNMC Department of Neurological Sciences Professor, states that Christensen's severely dilated left atrium and mildly decreased left ventricular function place him at a higher risk for recurrent atrial fibrillation. (App. II:363; R. Doc. 51-3 at 6.) Dr. Fayad similarly concludes that relevant medical literature shows "the risk of seizures after stroke is significantly elevated after an ischemic stroke, and approaches about 5% within the first 5 years after stroke." (*Id*.) These facts are undisputed.

The potential harm of a seizure for a Trainman/Conductor is catastrophic. Christensen's position required him to operate and control trains or locomotives. Christensen agreed that mistakes made in his position could result in serious damage, injury, or death. (App. V:965-66; R. Doc. 63-6 at 30:6-31:12; App. V:980; R. Doc. 63-6 at 45:12-14.) Even where the likelihood of an acute incapacitation event may be small, if the risk of harm is severe, it should be treated as significant. *Anderson,* 2022 WL 1073581, at * 2–3.

27

Regarding the likelihood and imminence of the potential harm, Dr. Holland determined that Christensen posed an immediate, imminent, and significant risk of sudden incapacitation that could seriously endanger both himself and his co-workers if he continued in the Trainman/Conductor role. (App. III:528; R. Doc. 51-6 at 4 (UP000158).) At the very least, those circumstances and considerations made it reasonable for Dr. Holland—acting to prevent worker injury and commensurately mitigate liability risk to Union Pacific—to conclude that the restrictions were necessary unless or until Christensen's increased risk of sudden incapacitation dissipated.

As noted above, the ADA "requires only that the employer rely on an 'objectively reasonable' opinion, rather than an opinion that is correct." *Michael*, 808 F.3d at 309. The Court's role is to ensure the "decision-maker has reasonably considered and relied upon sufficient evidence specific to the individual and the potential injury, not to determine on its own which evidence it believes is more persuasive." *Knapp v. Northwestern Univ.*, 101 F.3d 473, 484 (7th Cir. 1996). That decision is instead best left to the entity's doctor, so long as it is made "with reason and rationality" and "objective evidence," rather than

28

unfounded stereotypes. *Id.* at 484, 486. Indeed, the law affords Union Pacific the latitude to determine for itself how much safety-related risk it is willing to accept. *See EEOC v. Schneider Nat., Inc.*, 481 F.3d 507, 510 (7th Cir. 2007) (confirming that an employer has a right "to determine how much risk is too great for *it* to be willing to take" (emphasis in original)).

Dr. Holland had to make a real-time assessment where forecasting the future is nearly impossible, and miscalculating the risk carries the potential for mortally serious consequences. Dr. Holland's decision was firmly rooted in medical science and an individualized review of Christensen's medical testing and evaluations that objectively showed the significant risk of future sudden incapacitation risk that could prove incredibly dangerous in his safety-sensitive position—in other words, "objective evidence," which alone is enough. *Knapp*, 101 F.3d at 486.

## II. IN ADDITION TO UNION PACIFIC'S "DIRECT THREAT" DEFENSE, CHRISTENSEN'S ADA DISPARATE TREATMENT CLAIM FAILS AS A MATTER OF LAW ON OTHER GROUNDS.[8]

---

[8] Union Pacific also moved for summary judgment on these other grounds. (App. I:56-57; R. Doc. 50 at 5-20.)

29

As indicated in "Standard of Review," *supra*, this Court may affirm summary judgment in favor of Union Pacific for any reason supported by the record, regardless of whether it was a basis of the District Court's ruling. Although the District Court properly dismissed Christensen's disability discrimination claim on "direct threat" grounds, dismissal was also appropriate due to Christensen's failures as a matter of law to establish other requisite aspects of his lone ADA claim.

### A. Christensen Must Show Intentional Discrimination Under the *McDonnell Douglas* Burden-Shifting Analysis.

At every level, federal courts have stressed that a disparate treatment claim such as Christensen's fails without evidence of *discriminatory intent*. "[E]vidence of the employer's subjective intent to discriminate [] is required" for an ADA disparate treatment claim. *Raytheon Co. v. Hernandez*, 540 U.S. 52, 53 (2003). Following the Supreme Court's direction, this Court has held that the claim "requires proof of discriminatory intent." *Withers v. Johnson*, 763 F.3d 998, 1003 (8th Cir. 2014). In fact, such intent is the "key element." *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004).

30

Appellate Case: 25-2173     Page: 41     Date Filed: 10/24/2025 Entry ID: 5571587

An ADA claimant can meet this burden to show the requisite discriminatory intent with either "direct" or "indirect" evidence. *Evans v. Coop. Response Ctr., Inc.*, 996 F.3d 539, 545 (8th Cir. 2021), *cert. denied*, 142 S. Ct. 769 (Jan. 10, 2022). Direct evidence shows "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *St. Martin v. City of St. Paul*, 680 F.3d 1027, 1033 (8th Cir. 2012). This requires "evidence that clearly points to the presence of an illegal motive." *Id; see also McCullough v. Univ. of Arkansas for Med. Scis.*, 559 F.3d 855, 861 (8th Cir. 2009) ("Direct evidence" reflects "without inference, a discriminatory bias."); *Perry v. Zoetis, LLC*, 8 F.4th 677, 682 (8th Cir. 2021) (same). "[D]irect evidence of discriminatory intent is rare." *Marzec v. Marsh*, 990 F.2d 393, 395 (8th Cir. 1993).

Where, as here, an employer merely accounts for the workplace safety-related risks of an employee's health condition, such instances are routinely assessed using the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., Anderson v. KAR Global*, 78 F.4th 1031 (8th Cir. 2023) ("When there is

31

no direct evidence of [ADA] discrimination…the plaintiff may establish an inference of [ADA] discrimination…under the burden-shifting framework provided by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)" (citing *Canning v. Creighton Univ.*, 995 F.3d 603, 614-15 (8th Cir. 2021)); *Olsen v. Cap. Region Med. Ctr.*, 713 F.3d 1149 (8th Cir. 2013) (applying the *McDonnell Douglas* analysis and affirming dismissal of claims by hospital employee terminated due to safety risks posed by seizures); *Faulkner v. Douglas Cnty., Neb.*, 906 F.3d 728, 733 (8th Cir. 2018) (applying *McDonnell Douglas* and thus requiring that claimant show pretext even though it was "undisputed that [claimant] had a disability and that her employment was terminated due to her disability"); *accord Fjelsta v. Zogg Dermatology*, 488 F.3d 804, 810 (8th Cir. 2007) (indicating that evidence that only "refers to a protected status without reflecting bias is not direct evidence of discrimination"). While Christensen might disagree with the ultimate judgments of Union Pacific's medical personnel, he points to no evidence "directly reflecting [an] alleged discriminatory attitude" by anyone acting on behalf of Union Pacific. *Schierhoff v. GlaxonSmithKline Consumer Healthcare, L.P.*, 444

32

F.3d 961, 966 (8th Cir. 2006). As such, his disparate treatment claim must be analyzed utilizing the *McDonnell Douglas* framework.[9]

Under the accepted *McDonnell Douglas* framework, to make out a *prima facie* case of discrimination, Christensen must establish that (1) he was "disabled" as defined by the ADA, (2) he was qualified to perform the "essential functions" of his job, with or without reasonable accommodation, (3) he suffered an adverse employment action, and (4) there existed a sufficient causal connection between the adverse action

---

[9] Under the ADA and its companion regulations, employers may use medical examinations to assess an employee's ability to perform the job. *See* 42 U.S.C. § 12112(d)(4)(A)-(B); 29 C.F.R. § 1630.14(c). FFD evaluations like that at-issue here "are considered a reasonable means of making this determination" without exposure to ADA claims. *Wisbey v. City of Lincoln*, 612 F.3d 667, 672-73 (8th Cir. 2010), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011). The ADA's medical inquiry provisions separate the statute from other discrimination laws. Unlike Title VII, the ADA provides employers a lawful means to responsibly explore whether an employee's protected status interferes with his/her ability to perform the job. By authorizing FFD evaluations, the ADA acknowledges that medical conditions present work-related consequences in ways that other immutable characteristics (like race) do not. It is why *McDonnell Douglas* applies when an employer terminates an employee for poor attendance, even though a disability causes every absence. *See Higgins v. Union Pac. R.R. Co.*, 931 F.3d 664, 669 (8th Cir. 2019). And it is why Union Pacific's doctors' decisions here to proactively ensure Christensen's safety to continue conducting locomotives does not itself reflect any discriminatory bias on the basis of disability. In short, if the FFD process itself is lawful, then its *outcome* alone cannot be direct evidence of discrimination.

33

and his disability. *Evans*, 996 F.3d at 545. "If [the plaintiff] fails to establish any element of his *prima facie* case, summary judgment is proper." *Kellogg*, 233 F.3d at 1086. If, however, a plaintiff does satisfy all required *prima facie* case elements, then the employer must proffer a legitimate, non-discriminatory reason for the challenged adverse employment action. *Evans*, 996 F.3d at 545. Once the employer has done so, the burden shifts back to the plaintiff to show that the proffered reason is pretextual, and that the challenged action was really due to intent to discriminate on the basis of disability. *Id.* A claimant's failure to establish pretext is itself fatal to his discrimination claim. *Winters v. Deere & Co.*, 63 F.4th 685, 691 (8th Cir. 2023).

In this action, Christensen failed to generate genuine disputes of material fact with respect to some of these requirements, and each and any one of these failures independently justifies affirming the dismissal of his disparate treatment claim.

### B. Christensen Could Not Show He Was a "Qualified Individual" Capable of Fully Performing the "Essential Functions" of His Conductor Role.

To survive summary judgment, Christensen must make a *prima facie* showing that he was qualified to perform the "essential functions"

34

of his position at the time of the adverse action about which he complains. *Brunckhorst v. City of Oak Park Heights*, 914 F.3d 1177, 1183 (8th Cir. 2019); *Otto v. City of Victoria*, 685 F.3d 755, 758 (8th Cir. 2012); *see also* 29 C.F.R. §1630.2(m). "Essential functions are 'the fundamental job duties of the employment position.'" *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 923 (8th Cir. 2018) (quoting *Moritz v. Frontier Airlines, Inc.*, 147 F.3d 784, 787 (8th Cir. 1998)); *see also* 29 C.F.R. §1630.2(n). Because Christensen is proceeding only on a "regarded as" disability theory[10], the question of whether he could perform the "essential functions" of his position with the aid of a reasonable accommodation is not relevant. *Duello v. Buchanan Cnty. Bd. of Sup'rs*, 628 F.3d 968, 972-73 (8th Cir. 2010); *see also Wurzel v. Whirlpool Corp.*, 482 F. App'x 1, 11 fn. 13 (6th Cir. 2012) ("As a plaintiff bringing a 'regarded as' claim, Wurzel would not be entitled to the benefit of a reasonable accommodation [as part of the direct threat analysis]."); *Munoz v. Union Pac. R.R. Co.*, No. 2:21-CV-00186-HL, 2022 WL 4348605, at \*8 fn. 6 (D. Or. Aug. 9, 2022), *report and recommendation adopted,* No.

---

[10] Christiansen has conceded that he proceeds only under the "regarded as" theory. (App. III:584; R. Doc. 61 at 1 n.1.)

Appellate Case: 25-2173     Page: 46     Date Filed: 10/24/2025 Entry ID: 5571587

2:21-CV-00186-HL, 2022 WL 4329427 (D. Or. Sept. 16, 2022); *E.E.O.C. v. Rexnord Indus., LLC*, 966 F. Supp. 2d 829, 840 (E.D. Wis. 2013) ("[I]t stands to reason that a plaintiff in a 'regarded as' claim is also not entitled to reasonable accommodation in the direct threat determination. As such, whether Rexnord provided a reasonable accommodation is not considered in the court's direct threat analysis."); *Hoback v. City of Chattanooga*, No. 1:10-CV-74, 2012 WL 3834828, at *5 (E.D. Tenn. Sept. 4, 2012) ("A plaintiff in a 'regarded as' claim is also not entitled to reasonable accommodation in the direct threat determination."); 42 U.S.C. §12201(h).

Christensen is not qualified, based on two mutually-reinforcing pillars of the ADA. First, employers are "entitled to rely on [medical] recommendations that [an employee] was not able to safely perform an essential function of [the] job." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 969 (7th Cir. 2020). Indeed, it would "defy common sense to demand that [employers] disregard [] well-documented medical opinions and allow [their] employees…to prematurely return to work, thereby jeopardizing their safety." *Id.* Second, "whether a plaintiff is qualified is measured at the time of the adverse employment action, even

36

if the plaintiff is likely to recover in a relatively short period of time." *Duello*, 628 F.3d at 972; *see also Browning v. Liberty Mut. Ins.*, 178 F.3d 1043, 1048 (8th Cir. 1999).

Here, the undisputed medical evidence shows Christensen had a type of stroke that creates an enhanced risk of future seizures and sudden incapacitation. The FMCSA's guidance on ischemic strokes—on which Union Pacific reasonably relied in creating its own medical standards that governed Christensen's FFD evaluation—recommended a corresponding five-year waiting period before Christensen could return to his prior safety critical position. (App. II:256-57; R. Doc. 50-2 at 164-65 (RCHRISTENSEN00000196-97).) Union Pacific could not simply disregard the medical evidence or the medical guidance of the FMCSA and knowingly expose itself to the very safety-related risk the Handbook aims to prevent. *Accord Rizzo v. Children's World Learning Ctrs., Inc.*, 173 F.3d 254, 268 (5th Cir. 1999) ("There is no evidence that Congress intended to place an employer in such a Catch-22 situation—either discriminate or endanger your business and the safety of others"). Doing nothing in the face of all this evidence would have endangered Christensen himself, as well as his co-workers and members of the

37

public—and could have well exposed Union Pacific to significant liability in the event of a future catastrophic episode. Union Pacific could not (and certainly was not required to) disregard the medical evidence and knowingly expose itself to an unacceptable level of safety-related risk and attendant liability risk. *Accord Stern v. St. Anthony's Health Ctr.*, 188 F.3d 276, 295 (7th Cir. 2015) ("The ADA does not require an employer to walk 'on a razor's edge—in jeopardy of violating the [ADA] if it fired such an employee yet in jeopardy of being deemed negligent if it retained him and he hurt someone.'" (quoting *Palmer v. Circuit Court of Cook Cnty.*, 117 F.3d 351, 352 (7th Cir. 1997)).

Moreover, Christensen's own treating physician, Dr. Call, conceded that Christensen is at an increased risk of suffering an additional, future stroke as a result of his first stroke. (App. IV:704-05; R. Doc. 63-1 at 47:22-48:11.) Therefore, as of March 2016, when Dr. Holland issued Christensen's medical restrictions, doctors on both sides of the case agreed Christensen was more likely to suffer incapacitating episodes in the future than the general public. While Christensen nonetheless tries to dispute the necessity of the medical restrictions, he fails to provide any expert testimony or factual evidence to support his ability to perform

38

safely the essential functions of his job as a Trainman/Conductor. And safety is irrefutably a key function of Christensen's job. (App. I:90-91; R. Doc. 50-1 at 2-3.) Thus, his heightened future risk of suddenly losing consciousness rendered him unable to perform all of the essential functions of that job.

On this record, Christensen cannot establish that he was capable of performing the essential functions of his safety-sensitive position at the time he sought to return to work shortly after his stroke. Christensen may try to point to his successful performance of those functions for years before January 2015, but what he did *prior* to his ischemic stroke has no relevance to his safety risk from sudden incapacitation *thereafter*. This failure to demonstrate he was a "qualified individual" alone dooms any ADA disparate treatment claim. *Accord Duello*, 628 F.3d at 971-74 (affirming dismissal of ADA discriminatory termination claim due to truck operator's inability to perform the essential functions of his job following a seizure).

### C. Christensen Could Not Prove That Union Pacific's Legitimate Workplace Safety Reasons for Issuing the Medical Restrictions Were Mere Pretext for Intentional Discrimination.

Appellate Case: 25-2173   Page: 50   Date Filed: 10/24/2025 Entry ID: 5571587

Even if Christensen could somehow establish all elements of his *prima facie* case, he would ultimately still bear the burden to prove that Union Pacific's rationale for issuing medical restrictions to him after his stroke was really pretextual and, in fact, rooted in discriminatory intent. Christensen failed to provide any such evidence.

Union Pacific's legitimate, nondiscriminatory reason for issuing medical restrictions to Christensen was undeniably the safety risk posed by Christensen's increased risk of sudden incapacitation due to a recurrent stroke or seizure while working on or near trains and/or otherwise operating trains or locomotives. Workplace safety is a legitimate, nondiscriminatory reason justifying an adverse employment action. *Pickens*, 264 F.3d at 778. Union Pacific's articulation of that nondiscriminatory reason shifts the burden back to Christensen to prove that Union Pacific's explanation was pretextual. *Winters*, 63 F.4th at 690.

### 1. Legal Standards

To show pretext, Christensen must offer evidence "to demonstrate both that [Union Pacific's] articulated reason for the adverse employment action was false and that discrimination was the real reason." *Id.* Proving pretext "'requires more substantial evidence than it takes to

40

make a prima facie case' and 'evidence of pretext and discrimination is viewed in light of the employer's justification.'" *King v. Guardian ad Litem Bd.*, 39 F.4th 979, 987 (8th Cir. 2022) (quoting *Phillips v. Mathews*, 547 F.3d 905, 912-13 (8th Cir. 2008)). Moreover, a proffered legitimate reason "need not, in the end, be correct if the employer honestly believed the asserted grounds at the time of the [adverse action]." *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008); *see also Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 903 (8th Cir. 2015). Stated differently, a plaintiff must "present sufficient evidence that [the employer defendant] acted with an intent to discriminate, not merely that the reason stated by the [employer] was incorrect." *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1003 (8th Cir. 2012). As such, a plaintiff cannot show pretext merely by challenging his employer's underlying medical opinions or conclusions. *Accord Crocker v. Runyon*, 207 F.3d 314, 319 (6th Cir. 2000) ("Even if the earlier medical opinions [of two private physicians] were demonstrably flawed, the [employer's] reasonable reliance upon them is not discriminatory.").

Evidence of pretext typically includes instances where an employer failed to follow its own policies, treated similarly-situated but non-

41

disabled employees more favorably, or shifted its explanation for the adverse employment decision. *Young v. Builders Steel Co.*, 754 F.3d 573, 578 (8th Cir. 2014). Christensen makes no showing here that is remotely capable of suggesting Union Pacific issued medical restrictions to him as a pretext for intentional disability discrimination.

### 2. Christensen is unable to impugn Union Pacific's legitimate and sincere safety reasons for issuing medical restrictions.

As set forth above, Union Pacific's medical personnel consistently followed the company's internal medical safety policies, which in turn were based on objective medical guidance issued by a federal governmental agency.[11] Everything about the FFD evaluation process confirms that go-forward workplace safety was the operative consideration, and Union Pacific's decision-making was consistently explained as such. Christensen can produce no evidence calling into question Union Pacific's good-faith focus on workplace safety during his

---

[11] While Christensen generally objects to the more stringent changes in Union Pacific's medical risk management policies during his initial year of restrictions, he points to no authority suggesting an intervening change in employer policy—*for business reasons wholly unrelated to the plaintiff*—is somehow tantamount to a failure to follow policy for pretext purposes.

Appellate Case: 25-2173    Page: 53    Date Filed: 10/24/2025 Entry ID: 5571587

FFD evaluation—indeed, Christensen concedes that he had a duty in his position to his fellow employees regarding safety. (App. V:965-66; R. Doc. 63-6 at 30:6-31:12; App. V:980; R. Doc. 63-6 at 45:12-14.) Moreover, Christensen proffers no evidence of legitimate comparators who received more favorable treatment.

### 3. Christensen cannot prove that Union Pacific acted with an intent to discriminate on the basis of disability.

Even if Christensen could somehow call Union Pacific's good faith safety decision-making into question, he still has absolutely no evidence suggesting that the company was really motivated by a desire to discriminate against him based on disability. As discussed above, the evidence here uniformly establishes that Union Pacific did not place medical restrictions on Christensen because it considered him to be disabled. Instead, Union Pacific issued the restrictions solely because Christensen's health circumstances posed a substantial risk of future sudden incapacitation, which in turn posed safety risks to himself and others within the context of his safety sensitive job. Importantly, this Court (like others) has clarified that taking adverse action against an employee "because of the job performance consequences of a

43

disability…rather than the disability itself, is not actionable under the ADA." *Mole v. Buckhorn Rubber Prods., Inc.*, 165 F.3d 1212, 1219 n.3 (8th Cir. 1999); *see also Power v. Univ. of N.D. Sch. of Law*, 954 F.3d 1047, 1054-55 (8th Cir. 2020) (explaining that a decision based on "factors that may have been affected by [plaintiff's] disability" does not signify "evidence of a discriminatory animus against [him] based on his disability"); *accord Huber v. Westar Foods, Inc.*, 139 F.4th 615, 627 (8th Cir. 2025) (en banc) (clarifying, in finding lack of pretext for purposes of ADA disparate treatment claim, that an employer's reliance an employee's failure to follow policies is not pretextual even if the employee's noncompliance was exacerbated by or otherwise related to a disability); *Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1198 (7th Cir. 1997) ("The employer who fires a worker because the worker is diabetic violates the [ADA]; but if he fires him because he is unable to do his job, there is no violation, even though the diabetes is the cause of the worker's inability to do his job."). At most, Christensen can show that Union Pacific issued medical restrictions to him because of performance-related safety risks resulting from his particular medical episode, which is insufficient to demonstrate the requisite discriminatory intent.

44

Appellate Case: 25-2173     Page: 55     Date Filed: 10/24/2025 Entry ID: 5571587

In short, any contention of discriminatory pretext here is baseless. Christensen's failure to show pretext independently dooms his disparate treatment claim as a matter of law. *Winters*, 63 F.4th at 691.

## CONCLUSION

For the reasons articulated herein, the Court should affirm the District Court's dismissal of Christensen's ADA disability discrimination claim.

Dated this 24th day of October, 2025.

UNION PACIFIC RAILROAD COMPANY,
Defendant/Appellee.

By:   /s/ Mark J. Goldsmith
      Scott P. Moore (NE# 20752)
      Mark J. Goldsmith (NE# 26429)
      Sarah M. Huyck (NE#27046)
      Baird Holm LLP
      1700 Farnam Street, Suite 1500
      Omaha, NE 68102
      Phone: 402-344-0500
      Facsimile: 402-344-0588
      Email: spmoore@bairdholm.com
            mgoldsmith@bairdholm.com
            shuyck@bairdholm.com

Appellate Case: 25-2173   Page: 56   Date Filed: 10/24/2025 Entry ID: 5571587

# CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this brief complies with the type-volume limitation provided in the Fed. R. App. P. 32(a)(7)(B), in that it contains 10,282 words. This brief was created and formatted using MS Word 11.0 and is in 14-point Century Schoolbook Font. The brief has been scanned for viruses, and it is virus-free.

Dated this 24th day of October, 2025.

/s/ Mark J. Goldsmith

# CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of October, 2025, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/Mark J. Goldsmith

6883753.6

Appellate Case: 25-2173     Page: 57     Date Filed: 10/24/2025 Entry ID: 5571587