No. 25-2173

# In the United States Court of Appeals for the Eighth Circuit

Ross Christensen,
*Plaintiff-Appellant,*

v.

Union Pacific Railroad Co.,
*Defendant-Appellee.*

-----------------------------------------------

On Appeal from the United States District Court
for the District of Nebraska - Omaha
No. 8:23-cv-00268-RFR-MDN (The Hon. Robert F. Rossiter, Jr.)

## REPLY BRIEF OF PLAINTIFF-APPELLANT

James H. Kaster
NICHOLS KASTER, PLLP
4700 IDS Center
80 S. 8th Street
Minneapolis, MN 55402
(612) 256-3200
kaster@nka.com

*Counsel for Plaintiff-Appellant*
*Ross Christensen*

Appellate Case: 25-2173     Page: 1     Date Filed: 11/26/2025 Entry ID: 5582692

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................i

TABLE OF AUTHORITIES ...............................................................................iii

INTRODUCTION ...............................................................................................1

ARGUMENT .......................................................................................................3

I.     The direct-threat defense is the bulwark against discrimination and UP's response highlights why summary judgment should be reversed. ...................3

     A.     The direct-threat defense requires detailed factual analysis unsuitable for summary judgment................................................................................4

     B.     The 2014 FMCSA Handbook was withdrawn as obsolete and prescriptive evidence.........................................................................6

     C.     UP admits that it imposed the extended 5-year policy for reasons wholly unrelated to Christensen's ability to safely perform his job duties. ........7

     D.     UP omits the fact that Christensen met the exact industry standards that UP praises in its response. ................................................................8

     E.     UP's reliance on out-of-circuit cases from the wrong side of a circuit split is wholly unpersuasive.............................................................9

     F.     UP's attempt to distinguish this Court's clear precedent lacks merit....11

     G.     Summary judgment on UP's direct-threat affirmative defense threatens to authorize unfettered disability discrimination. .................................13

II.     UP's alternative grounds to affirm also fail..................................................14

     A.     The nature of Christensen's disability claim presents some "tricky questions" of fact that must be resolved by a jury................................15

     B.     The record contains direct evidence of discrimination sufficient to create a genuine issue of fact. ...................................................................16

i

C.      Even if the *McDonnell Douglas* burden-shifting framework was applied to this case, UP's motion for summary judgment still fails. ................... 18

      i.      *UP does not challenge that it imposed an adverse action because it regarded Christensen as disabled.* ........................................... 18

      ii.      *After over 10 years working for UP, Christensen was without a doubt a qualified individual under 29 C.F.R. § 1630.2(m).* ....... 20

      iii.      *Like in Sanders, causation has been established here.* .............. 22

      iv.      *Compelling evidence reveals pretext in UP's employment restrictions against Christensen.* ................................................. 23

CONCLUSION ...................................................................................................... 26

CERTIFICATE OF COMPLIANCE ...................................................................... 28

CERTIFICATE OF SERVICE .............................................................................. 29

Appellate Case: 25-2173     Page: 3     Date Filed: 11/26/2025   Entry ID: 5582692

# TABLE OF AUTHORITIES

## CASES

*Anderson v. KAR Glob.,*
78 F.3d 1047 (8th Cir. 2023) ......................................................................24

*Bashara v. Black Hills Corp.,*
26 F.3d 820 (8th Cir. 1994) .......................................................................18

*Bragdon v. Abbot,*
524 U.S. 624 (1998) ...........................................................................4, 5, 13

*Capitol Servs' Mgmt., Inc. v. Vesta Corp.,*
933 F.3d 784 (D.C. Cir. 2019) ...................................................................14

*Carrillo v. Union Pacific R.R Co.,*
2024 WL 3861374 (5th Cir. Aug 19, 2024) ...........................................10, 11

*Coleman v. Pennsylvania State Police,*
561 Fed. App'x 138 (3rd Cir. 2014) ..........................................................10

*Cushman v. Union Pacific R.R. Co.,*
No. 8-23-CV-196, 2024 WL 1094703 (D. Neb. Mar. 12, 2024)....................23

*Cutter v. Wilkinson,*
544 U.S. 709 (2005)..................................................................................14

*E.E.O.C. v. Amsted Rail Co., Inc.,*
280 F. Supp. 3d 1141 (S.D. Ill. Nov. 16, 2017)............................................6

*E.E.O.C. v. Drivers Mgmt., LLC,*
142 F.4th 1122 (8th Cir. 2025).............................................................*passim*

*E.E.O.C. v. Hibbing Taconite Co.,*
720 F.Supp.2d 1073 (D. Minn. 2010).........................................................5

*E.E.O.C. v. Prod. Fabricators, Inc.,*
763 F.3d 963 (8th Cir. 2014) .....................................................................24

Appellate Case: 25-2173     Page: 4     Date Filed: 11/26/2025 Entry ID: 5582692

*E.E.O.C. v. Wal-Mart Stores, Inc.,*
477 F.3d 561 (8th Cir. 2007) ...................................................................2, 10, 15

*Evans v. Cooperative Response Center, Inc.,*
996 F.3d 539 (8th Cir. 2021) ...................................................................18, 22

*Hite v. Vermeer Mfg. Co.,*
446 F.3d 858 (8th Cir. 2006) ...........................................................................24

*Hudson v. Norris,*
227 F.3d 1047 (8th Cir. 2000) .........................................................................24

*Jacobs v. N.C. Administrative Office of Courts,*
780 F.3d 562 (4th Cir. 2015) ...........................................................................14

*Lake v. Yellow Transp., Inc.,*
596 F.3d 871 (8th Cir. 2010) ...........................................................................24

*McAllister v. Innovation Ventures, LLC,*
983 F.3d 963 (7th Cir. 2020) .....................................................................20, 21

*McNary v. Schreiber Foods, Inc.,* 20
535 F.3d 765 (8th Cir. 2008) ...........................................................................25

*Muldrow v. City of St. Louis, Missouri,*
601 U.S. 346 (2024)............................................................................................2

*Murray v. UBS Securities, LLC,*
601 U.S. 346 (2024).........................................................................................16

*Norcross v. Sneed,*
755 F.2d 113 (8th Cir. 1985) .....................................................................16, 23

*Nunes v. Wal-Mart Stores, Inc.,*
164 F.3d 1243 (9th Cir. 1999) .........................................................................20

*Osborne v. Baxter Healthcare Corp.,*
798 F.3d 1260 (10th Cir. 2015) .....................................................................5, 14

iv

Appellate Case: 25-2173    Page: 5    Date Filed: 11/26/2025 Entry ID: 5582692

*Palmer ex rel. v. Union Pac. R.R. Co.,*
 139 F.4th 970 (8th Cir. 2025) ........................................................................1-2

*Perry v. Zoetis, LLC,*
 8 F.4th 677 (8th Cir. 2021) .................................................................17

*Reeves v. Sanderson Plumbing Prods., Inc.,*
 530 U.S. 133 (2000)........................................................... 2, 24, 25

*Rizzo v. Children's World Learning Ctr.,*
 84 F.3d 758 (5th Cir. 1996).................................................13, 14

*Sanders v. Union Pac. R.R. Co.,*
 108 F.4th 1055 (8th Cir. 2024)................................................*passim*

*Sanders v. Union Pacific R.R. Co.,*
 2021 WL 4783629 (D. Neb. Oct. 7, 2021).................................*passim*

*Sallis v. University of Minnesota,*
 408 F.3d 470 (8th Cir. 2005)...............................................................19

*Schierhoff v. GlaxonSmithKline Consumer Healthcare, L.P.,*
 444 F.3d 961 (8th Cir. 2006) ..........................................................16

*School Bd. of Nassau County v. Arline*
 480 U.S. 273 (1987) .........................................................................3-4

*Vasquez v. Union Pacific,*
 2025 WL 3034706 (5th Cir. Oct. 30, 2025)............................................10, 11

*Wealot v. Brooks,*
 865 F.3d 1119 (8th Cir. 2017) ...................................................................2

## RULES, STATUTES, REGULATIONS

Fed. R. Civ. P. 32(a)(8) ..................................................................6

Fed. R. Evid. 801(d)(2) ..................................................................6

42 U.S.C. § 12102(1) ..................................................................19

Appellate Case: 25-2173    Page: 6    Date Filed: 11/26/2025 Entry ID: 5582692

42 U.S.C. § 12111(3) ..........................................................................3

42 U.S.C. § 12111(8) ........................................................................20

29 C.F.R. § 1630.2(l) ...................................................................19, 26

29 C.F.R. § 1630.2(m) .....................................................................20

29 C.F.R. § 1630.2(r) .................................................................*passim*

49 C.F.R. § 391.43(a) .........................................................................8

49 C.F.R. Part 391, Subpart E .........................................................6

Appellate Case: 25-2173     Page: 7     Date Filed: 11/26/2025 Entry ID: 5582692

## INTRODUCTION

Union Pacific ("UP") admits the extension of Ross Christensen's ("Christensen") 1-year work restriction to 5 years was "for business reasons wholly unrelated to" Christensen and his ability to safely perform his job. Appellee's Br. at 42, n.11. This admission justifies reversal. UP's blanket policy violates the Americans with Disabilities Act ("ADA"). This Court recently confirmed this in *E.E.O.C. v. Drivers Mgmt., LLC*, 142 F.4th 1122, 1132-33 (8th Cir. 2025) ("*Werner*"), which affirmed the lower court's recognition that an employer's failure "to individualize the direct-threat analysis . . . preclud[ed] [it] from establishing that defense as a matter of law". The same is true here. But UP's failures do not end there.

UP fails to mention that at the end of the initial 1-year restriction, Christensen was found safe to work as a commercial truck driver following an examination by a medical doctor and certified FMCSA medical examiner—under the same industry standard UP claims to rely on here. App.Vol.3 at 612, R. Doc. 61, at 21. Christensen attempted to return to work three times over the course of five years, all to no avail: in 2016, when he was originally scheduled to return, in 2018, when he was told to apply again in 15 months, and in 2020, when he initiated a return to work but received no response from UP. App.Vol. 3 at 572, R. Doc. 51-7, at 20. Each of these rejections are adverse actions. *Palmer ex rel. v. Union Pac. R.R. Co.*, 139 F.4th 970, 973 (8th

1

Appellate Case: 25-2173    Page: 8    Date Filed: 11/26/2025 Entry ID: 5582692

Cir. 2025); *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355 (2024). And each action creates fact issues on direct-threat.

UP avoids controlling Eighth Circuit authority, relying instead on unpublished opinions from the Third and Fifth Circuit, which are on the wrong side of the circuit split on the question of which party has the burden of proof on direct-threat. This is flatly contrary to the majority rule, and this Court's clear precedent in *E.E.O.C. v. Wal-Mart Stores, Inc.*, 477 F.3d 561 (8th Cir. 2007)*, Sanders v. Union Pac. R.R. Co.*, 108 F.4th 1055, 1062 (8th Cir. 2024), and most recently, in *Werner*, 142 F.4th at 1132-33.

UP's burden of proof is also difficult. UP must prove the absence of any "genuine dispute as to any material fact" and that its "entitled to judgment as a matter of law." *Wealot v. Brooks*, 865 F.3d 1119, 1124 (8th Cir. 2017). And the Court must view the evidence in the light most favorable to Christensen and "disregard all evidence favorable to [UP] that the jury is *not required* to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (emphasis added).

Each of these reasons, separately or together, justify reversal. UP's last-ditch effort to justify affirmance through alternate grounds also fails.

Appellate Case: 25-2173     Page: 9     Date Filed: 11/26/2025 Entry ID: 5582692

**ARGUMENT**

**I.     The direct-threat defense is the bulwark against discrimination and UP's response highlights why summary judgment should be reversed.**

UP's admission that Christensen's restrictions were the result of a one-size-fits-all policy is the opposite of what the law requires. *See* 29 C.F.R. § 1630.2(r). The ADA requires individualized evaluation, not a general business policy.

The stringent direct-threat defense requirements exist to prevent the exact discrimination that Christensen suffered here. The defense demands an *individualized* assessment based on the *most current* medical knowledge or *best available* objective evidence, with consideration of the likelihood, duration, and severity of any safety threat. 42 U.S.C. § 12111(3); 29 C.F.R. § 1630.2(r). The United States Supreme Court in *School Bd. of Nassau County v. Arline*, explained the highly individualized assessment demanded under the direct-threat defense:

> The fact that *some* persons who have contagious diseases may pose a serious health threat to others under certain circumstances does not justify excluding from the coverage of the Act *all* persons with actual or perceived contagious diseases. Such exclusion would mean that those accused of being contagious would never have the opportunity to have their condition evaluated in light of medical evidence and a determination made as to whether they were "otherwise qualified."...[T]hey would be vulnerable to discrimination on the basis of mythology—precisely the type of injury Congress sought to prevent.

3

480 U.S. 273, 276, 280–86 (1987) (discussing the precursor[1] to the ADA, the Rehabilitation Act) (emphasis in original). The *Arline* decision lists factors that employers must consider in assessing an employer's ability to safety perform their job. These factors, later adopted by 29 C.F.R. § 1630.2(r), included the (1) nature of the risk, (2) duration of the risk, (3) severity of the risk, and (4) likelihood of the harm. *Id.* at 288. The fact intensive nature of these factors belies summary judgment here, especially where the moving party is the one asserting the defense.

### A. The direct-threat defense requires detailed factual analysis unsuitable for summary judgment.

UP's hypothetical risk of future incapacitation fails to satisfy the direct-threat defense at summary judgment. The district court and UP fail to address essential elements of the direct-threat defense:

> Direct Threat means a **significant risk** of **substantial harm** to the health or safety of the individual or others **that cannot be eliminated or reduced by reasonable accommodation.** The determination that an individual poses a "direct threat" shall be based on an individualized assessment of **the individual's present ability** to safely perform **the essential functions** of the job [and] shall be based on a reasonable medical judgment that relies on **the most current** medical knowledge and/or on the best available objective evidence. In determining whether an individual would pose a direct threat, **the factors to be considered include: (1) The duration of the risk; (2) The nature and severity of the potential harm; (3) The**

---

[1] *Bragdon v. Abbott*, 524 U.S. 624, 626 (1998) ("The ADA's direct threat provision, § 12182(b)(3), stems from *School Bd. of Nassau Cty. v. Arline...* in which this Court reconciled competing interests in prohibiting discrimination and preventing the spread of disease'").

4

> likelihood that the potential harm will occur; and (4) The imminence of the potential harm.

29 C.F.R. § 1630(r) (emphasis added). UP has not proven that Christensen posed a "significant risk of substantial harm."[2]

UP's doctor admits Christensen's risk of sudden incapacitation is incalculable. Appellant's Br. at 18 (citing App.Vol. 1 at 79, R. Doc. 50, at 28). The "ADA do[es] not ask whether a risk exists, but whether it is significant" because "few, if any, activities in life are risk free". *Bragdon*, 524 U.S. at 649; *see E.E.O.C. v. Hibbing Taconite Co.*, 720 F. Supp. 2d 1073, 1082 (D. Minn. 2010). And "[p]ermitting employers to obtain summary judgment by identifying . . . unlikely [safety] scenarios would eliminate ADA protection for disabled individuals working in [safety-sensitive] professions...". *Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1278 (10th Cir. 2015). Employers must evaluate the specific employee's circumstances, medical history, job duties, and potential accommodations, rather than applying blanket policies. *Werner*, 142 F.4th at 1133; *Sanders*, 108 F.4th at 1062. UP's reliance on some "unknowable" future risk of incapacitation from seizures that Christensen still has <u>never</u> experienced,

---

[2] The district court's order does not account for the individual nature of Christensen's job duties as a conductor for UP and instead relies on an assumption that "[t]he essential functions of [Christensen's] position included safely operating and moving trains" *alone*. App.Vol. 8 at 1847, R. Doc. 74, at 1. However, Christensen testified that he hostled power (operated a locomotive within a yard) "only a half a dozen times in the ten years that [he] worked there" and even in those rare instances, the operation would require an engineer. App.Vol. 5 at 970, R. Doc. 63-6, at 35:6-25.

Appellate Case: 25-2173     Page: 12     Date Filed: 11/26/2025 Entry ID: 5582692

was objectively <u>un</u>reasonable.

> **B.**  **The 2014 FMCSA Handbook was withdrawn as obsolete and prescriptive evidence.**

The district court erred in ruling as a matter of law that UP's reliance on the 2014 Handbook was objectively reasonable and constituted the most current medical knowledge. UP ignores the striking warning on the front of the Handbook on FMCSA's website stating, "Do Not Use," and brushes aside its own expert's admissions as hearsay. UP's expert's admissions in another case are plainly admissible both under Fed. R. Civ. P. 32(a)(8) as a deposition taken in an earlier action offered against the same party and under Fed. R. of Evid. 801(d)(2) as a party admission.

Even UP's own doctor admits: the Federal Register removed the Handbook because of its obsolescence and improper broad-brush guidance. App.Vol. 7 at 1544-46, 1548-49, R. Doc. 63-12, at 28:16-30:1, 32:6-33:11. The Federal Register's official notice, explaining that the MEH contained "information [that] was obsolete or... prescriptive in nature", and the warning on the cover of the Handbook cannot be ignored. *See* Appellant's Br. at 22. Critically, the Federal Motor Carrier Safety Regulations ("FMCSR") at 49 C.F.R. Part 391, Subpart E govern and dictate the safety requirements of commercial drivers, not the Handbook. Moreover, courts recognize that outdated recommendations cannot support direct threat determinations. *See*, e.g., *E.E.O.C. v. Amsted Rail Co., Inc.*, 280 F. Supp. 3d 1141, 1156 (S.D. Ill. Nov. 16, 2017). At the very least, the objective reasonableness of UP's interpretation and

6

reliance on the withdrawn Handbook warrants jury consideration, not summary judgment.

### C.   UP admits that it imposed the extended 5-year policy for reasons wholly unrelated to Christensen's ability to safely perform his job duties.

UP's one-size-fits-all policy cannot be accepted at summary judgment. UP admits that the abrupt extension of Christensen's initial 1-year work restriction to 5-years was purely "for business reasons wholly unrelated to" Christensen and his ability to safely perform his job. Appellee's Br. at 42, n.11. This admission is dispositive on UP's summary judgment motion under *Werner*. 142 F.4th at 1122 (confirming that blind application of blanket policies is contrary to the ADA).

Christensen has demonstrated that he met UP's requirements to resume work as early as 2016. However, UP broke its promise and refused to reinstate him, solely based on a company-wide blanket policy. Appellee's Br. at 42, n.11. To this day, the only reason UP has offered to Christensen for the extended restriction was its new policy. App.Vol. 8 at 1757, R. Doc. 67, at ¶9. After seeking reconsideration in 2018, Christensen was told he could return to work in 2020, but when Christensen later initiated this return, UP ignored his attempt. This raises a genuine dispute as to UP's true intent in imposing work restrictions on Christensen. In defense of this, UP claims only that it has no record of Christensen's 2020 attempt to return to work. App.Vol. 5 at 1168, R. Doc. 63-8, at 26:18-21. Coupled with UP's admission that UP

Appellate Case: 25-2173     Page: 14     Date Filed: 11/26/2025 Entry ID: 5582692

experienced many instances of such losses, this creates an issue of fact for trial. *Id.* at 26:18-21.

If UP's reliance on obsolete standards from the withdrawn Handbook can satisfy the direct-threat defense as a matter of law, Christensen wonders—worries—what if anything would fail to satisfy this defense. Certainly, every railroad would be able to do the same—eschewing a detailed and individualized evaluation for a withdrawn quick-reference guide—as would every commercial trucking company. This runs contrary to this Court's reasoning in *Werner*, 142 F.4th at 1133, the explicit withdrawal of the Handbook, and the ADA itself.

### D. UP omits the fact that Christensen met the exact industry standards that UP praises in its response.

Christensen has met the current FMCSA standards since 2016, when he received his commercial driver's license ("CDL") under the very FMCSA industry standards that UP claims to have adopted. Christensen was approved by an FMCSA medical examiner to drive heavy equipment for a commercial truck driving job that he was forced to take when UP prevented his return to work. When obtaining his CDL in 2016, a doctor physically examined Christensen. App.Vol. 8 at 1743, R. Doc. 64-7, at 2-4; App.Vol. 8 at 1758, R. Doc. 67, at 3. The 2014 FMCSA Handbook championed by UP required such an examination. App.Vol. 2 at 116, R. Doc. 50-2, at 24; *see also* 49 C.F.R. § 391.43(a) (requiring physical examination). Yet, UP did not conduct or even rely on the findings of a physical examination in 2016, 2018, nor

8

2020. UP's own expert recognizes the importance of physical examinations, admitting he cannot estimate Christensen's actual safety risk because he never examined Christensen. App.Vol. 1 at 82, R. Doc. 50, at 28. Christensen's neurologist and cardiologist agree with UP's expert that an actual examination is essential to determine ability to safely work. App.Vol. 1 at 53, R. Doc. 50, at 2. Again, this raises, at the very least, a triable issue of fact.

Christensen did not fail to meet the current FMCSA standards in 2016. Instead, what Christensen apparently failed to meet was UP's *misguided interpretation* of withdrawn and obsolete FMCSA guidelines based on dated medical knowledge.[3] App.Vol. 7 at 1512, R. Doc. 63-11, at 65:6-19. On this record, it is at least arguable that under proper application of the commercial driving industry's FMCSA standards in 2016, 2018, and 2020, Christensen did not pose a safety threat, let alone a *significant threat* as the defense requires.

### E. UP's reliance on out-of-circuit cases from the wrong side of a circuit split is wholly unpersuasive.

UP's reliance on cases adopting the minority rule on the burden of proof contradicts Eighth Circuit precedent. The Fifth and Third Circuits have placed the

---

[3] Pointedly, recent FMCSA guidance notes most will recover from a stroke within 1 year with the highest recurrence risk at 7-9 months post-event. *See e.g.* FMCSA Medical Examiners Handbook, 2024 Edition, available at: https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/2024-01/Medical%20Examiner%27s%20Handbook%202024%20Edition_0.pdf.

Appellate Case: 25-2173     Page: 16     Date Filed: 11/26/2025 Entry ID: 5582692

burden of proving an employer's direct-threat defense on the employee. In the Eighth Circuit, however, UP bears the burden of affirmatively proving every element of its direct-threat defense. *Werner*, 142 F.4th at 1132-33; *Sanders*, 108 F.4th at 1062; *Wal-Mart*, 477 F.3d at 571. UP makes no real attempt to explain how it can meet its affirmative burden as a matter of law under controlling precedent. UP merely looks to three unpublished—non-precedential—out-of-circuit opinions: the Third Circuit's unpublished decision in *Coleman v. Pennsylvania State Police,* 561 Fed. App'x 138 (3rd Cir. 2014), and the Fifth Circuit's unpublished decisions in *Carrillo*, 2024 WL 3861374 at *5 (5th Cir. Aug 19, 2024). and *Vasquez v. Union Pacific,* 2025 WL 3034706 at *4 (5th Cir. Oct. 30, 2025).

The Third Circuit's *Coleman* decision fails to make UP's point. The probationary trooper, who had not yet completed his training to qualify for the position and had experienced multiple seizures, is factually incomparable to Christensen, who has *never* experienced a seizure and was fully trained and qualified to perform his job duties. App.Vol. 8 at 1756, R. Doc. 67, at 1; *Coleman*, 561 F. App'x at 140, 144. The Third Circuit conflates the qualification requirement with direct-threat, thus effectively, placing the burden of proof on the employee under the direct-threat defense. *Id.* at 145.

The Fifth Circuit's unpublished cases, *Carrillo* and *Vasquez*, are similarly distinguishable. While both concern the withdrawn Handbook and UP's fitness-for-

Appellate Case: 25-2173     Page: 17     Date Filed: 11/26/2025 Entry ID: 5582692

duty program at issue here, that is where the comparison ends. In fact, following the minority rule, the Fifth Circuit imposes a presumption of currency and reasonableness in favor of the employer. *Vasquez* requires that the employee—not the employer— prove a negative: that the employer did *not* consider the most current medical evidence. *Vasquez,* 2025 WL 3034706 at *5 ("Vasquez 'does not identify medical literature missing from [UPRC's] consideration.'") (citing *Carrillo*, 2024 WL 3861374, at *5). Requiring that the employee prove that the employer's evidence is not the most current medical evidence is inconsistent with this Court's approach and the plain meaning of the law.

### F.     UP's attempt to distinguish this Court's clear precedent lacks merit.

UP's response largely ignores this Court's controlling precedent in *Werner* and *Sanders.* In the Eighth Circuit, an employer is not entitled to summary judgment on an affirmative direct-threat defense when the record contains conflicting testimony, controverted medical opinions, or fact issues that could persuade a jury to reject the defense. *Werner*, 142 F.4th at 1133 (affirming denial of employer's direct-threat defense as a matter of law because the "one-size-fits-all approach" cannot sustain the defense); *Sanders,* 108 F.4th at 1064 (affirming denial of summary judgment and upholding jury's rejection of direct-threat defense). Due to conflicting restriction periods from UP's doctors, Christensen's satisfaction of FMCSA safety standards, differing medical opinions from qualified physicians, and UP's admission that its

11

broad restriction was for business reasons unrelated to Christensen, summary judgment on UP's affirmative defense was inappropriate.

Despite not bearing the burden of proof, Christensen has provided affirmative evidence supporting his ability to safely return to work. App.Vol. 8 at 1758, R. Doc. 67, at ¶18. After experiencing a stroke in early 2015 and taking a year to recover, receive treatment, and fully resolve his atrial fibrillation, Christensen applied to return to work as a conductor at UP. App.Vol. 8 at 1758, R. Doc. 67, at ¶12. By early 2016, Christensen was symptom-free, had fully resolved his atrial fibrillation, and had not experienced any additional neurological events. *Id.* at 1758, R. Doc. 67, at ¶17. As instructed, Christensen fulfilled all required conditions and submitted the necessary documentation to return to work in early 2016, along with proof that he obtained a CDL under the current FMCSA standards. App.Vol. 8 at 1758, R. Doc. 67, at ¶12. In the interim UP adopted its one-size-fits-all policy that extended his work restriction to five years. The sole reason conveyed to Christensen for additional years of restrictions was a change in policy. App.Vol. 8 at 1878, R. Doc. 74, at 5. In 2018, Christensen sought reconsideration but despite his sustained and complete recovery, UP told Christensen that he had to wait another 15-months. App.Vol. 3 at 572, R. Doc. 51-7, at 20. Christensen tried again in 2020 but to no avail. App.Vol. 8 at 1758, R. Doc. 67, at ¶14.

12

In contrast, UP—the party bearing the affirmative burden of proof and facing a high bar at summary judgment—merely relies on its one-size-fits-all policy based on the obsolete and outdated Handbook and claims it "never received" the records Christensen faxed directly to UP in 2020. App.Vol. 5 at 1168, R. Doc. 63-8, at 26:16-21. These deflections cannot satisfy UP's burden.

### G. Summary judgment on UP's direct-threat affirmative defense threatens to authorize unfettered disability discrimination.

The proof requirement for direct-threat is the bulwark against unlawful discrimination against individuals with actual or perceived disabilities. *Bragdon*, 524 U.S. at 649. Congress recognized that "pervasive" discrimination against individuals based on real or apparent disability included discrimination resulting from "false presumptions, generalizations, misperceptions, patronizing attitudes" and other implicit and even facially well-meaning causes of exclusion. H.R. Rep. No. 101-485 at 311 (1990). As UP points out in its response, summary judgment on its direct-threat defense negates any potential liability for Christensen's disparate treatment disability discrimination claim. Direct threat is a fact determination which defies summary judgment granted in favor of the party with an especially high burden of proof.

Properly considered, whether an employee poses a direct threat "is a complicated, fact intensive determination . . . for the trier of fact to determine after weighing all of the evidence about the nature of the risk and the potential harm." *Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758, 764 (5th Cir. 1996);

13

*Osborne*, 798 F.3d at 1278 (same); 29 C.F.R. § 1630.2(r). The direct-threat defense is rarely a question of law. *Rizzo*, 84 F.3d at 764; *see also Jacobs v. N.C. Administrative Office of Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (reversing district court that "improperly resolved factual issues at... summary judgment"). UP's fact-intensive direct threat defense should be resolved by a jury.

## II. UP's alternative grounds to affirm also fail.

The district court did not address whether Christensen established direct evidence of discrimination or a prima facie case of discrimination sufficient to reach a jury, instead calling these issues "tricky questions." App.Vol. 8 at 1886, R. Doc. 74, at 13. Nevertheless, UP requests this Court to affirm summary judgment on both grounds. *See* Appellee's Br. at 41. This Court is a court of review, not of first view, and it should reject UP's invitation to decide matters not decided below. *See Capitol Servs' Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 789 (D.C. Cir. 2019) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)). These issues were never reached by the lower court and should not be decided here.

At every stage, UP misleadingly attempts to inject its direct-threat defense into Christensen's case. UP argues that each element of Christensen's claim fails, all because UP perceived Christen's health condition as being a safety risk—based on what UP knew was outdated guidance from a withdrawn Handbook.

UP argues that it automatically defeats ADA claims if it contends its decision was based on a safety concern. However, this Court has firmly held that the employer bears the burden of proof on whether an employer poses a direct threat, "as the direct-threat defense is an affirmative defense." *Wal-Mart*, 477 F.3d at 571. And "[t]he question of whether [an employee] can perform his job safely, so as to be qualified for the position is not part of a plaintiff's prima facie case but goes to whether the Railroad can prevail on its direct-threat defense." *See Sanders*, 2021 WL 4783629, at *8-9. UP's placement of safety in its job descriptions does not rewrite this Court's precedent.

### A. The nature of Christensen's disability claim presents some "tricky questions" of fact that must be resolved by a jury.

While the district court's holding did not expressly reject UP's alternative arguments for summary judgment, the court suggested as much, saying "[t]his is not an easy case" and "the nature of Christensen's disability claim and the circumstances of this case present some tricky questions with respect to disability, being qualified, direct evidence, discriminatory animus, causation, and pretext." App.Vol. 8 at 1886, R. Doc. 74, at 13. UP's argument that no reasonable jury could accept Christensen's prima facie case, lacks merit. As the district court alluded, the tricky questions surrounding Christensen's disparate treatment claim can be answered in favor of Christensen.

Appellate Case: 25-2173     Page: 22     Date Filed: 11/26/2025 Entry ID: 5582692

**B.** **The record contains direct evidence of discrimination sufficient to create a genuine issue of fact.**

UP makes a single argument that this is not a direct evidence case: that Christensen "points to no evidence 'directly reflecting [an] alleged discriminatory attitude' by anyone action on behalf of [UP]." Appellee's Br. at 43 (*quoting Schierhoff v. GlaxonSmithKline Consumer Healthcare, L.P.*, 444 F.3d 961, 966 (8th Cir. 2006)). This argument is simply wrong.

UP uses the term "discriminatory attitude" to mean something akin to "animus" or an "illegal motive." *Id.* at 42-43. However, in this Circuit, "the ADA does not require evidence of prejudice toward the disabled. Rather, 'animus' in this context means simply the employer was motivated by the employee's disability." *Sanders*, 108 F.4th at 1062. In the Title VII context, "[t]he normal definition of discrimination is differential treatment." *Murray v. UBS Securities, LLC*, 601 U.S. 23, 24 (2024) (internal quotations omitted).

Under the ADA, the employer's discriminatory intent is established by direct evidence when "the defendant acknowledges relying on the plaintiff's [impairment] in reaching the employment decision." *Sanders*, 108 F.4th at 1062 (*quoting Norcross v. Sneed*, 755 F.2d 113, 116 (8th Cir. 1985)). Here, UP imposed the 5-year restriction on Christensen motivated by his stroke: Dr. Holland testified, "as I said in the memo, the reason we were putting the five-year sudden incapacitation restriction on him was because of the stroke... he had." App.Vol. 5, at 1084, R.Doc. 63-7, at 13. UP admits

16

in its response that its adverse action against Christensen was because of his health condition: "Where, as here, an employer merely accounts for the workplace safety-related risks of an employee's health condition...." *See* Appellee's Br. 42. No inferences need to be made, UP's only explanation for its work restrictions is Christensen's health condition. *See Perry v. Zoetis, LLC*, 8 F.4th 677, 682 (8th Cir. 2021) ("'Direct evidence' reflects 'without inference' a discriminatory bias.").

Like its rejected position on summary judgment in *Sanders*, UP argues here that Christensen does not establish direct evidence because Christensen posed "safety risks related to his employment." Appellee's Br. at 27; *Sanders v. Union Pacific R.R. Co.*, 2021 WL 4783629, at *8-9 (D. Neb. Oct. 7, 2021). As the *Sanders* district court provided there, "the question of whether [an employee] can perform his job safely, so as to be qualified for the position is not part of a plaintiff's prima facie case but goes to whether the Railroad can prevail on its direct-threat defense." *See* 2021 WL 4783629, at *8-9. The evidence here demonstrates that UP treated Christensen differently *because of his disability*, which in every circumstance is direct evidence of discrimination. *See Sanders*, 108 F.4th at 1060 ("To establish his claim, Sanders was required to show . . . the employer imposed work limitations *because of his disability*.") (emphasis added).

Appellate Case: 25-2173     Page: 24     Date Filed: 11/26/2025 Entry ID: 5582692

**C.    Even if the *McDonnell Douglas* burden-shifting framework was applied to this case, UP's motion for summary judgment still fails.**

UP's invocation of the *McDonnell Douglas* burden-shifting framework is unnecessary, as the record contains direct evidence that UP ended Christensen's career because of his perceived disability. *See Bashara v. Black Hills Corp.*, 26 F.3d 820, 823 (8th Cir. 1994) ("when direct evidence of discrimination exists, the plaintiff need not establish a prima facie case because creating an inference of discrimination is unnecessary"). Nevertheless, the record presents genuine disputes of material facts at each stage of the *McDonnell Douglas* analysis such that summary judgment in favor of UP is not warranted.

To succeed on summary judgment, UP must demonstrate there is no genuine dispute as to whether Christensen (1) was "disabled" under the ADA, (2) was qualified to perform the essential function of his job, (3) suffered an adverse employment action, and (4) demonstrated a sufficient causal connection between the adverse action and his disability." *Evans v. Cooperative Response Center, Inc.*, 996 F.3d 539, 545 (8th Cir. 2021).

*i.    UP does not challenge that it imposed an adverse action because it regarded Christensen as disabled.*

Christensen establishes that UP imposed an adverse personnel action because removal from service, such as UP's imposition of the 5-year restriction that prevented Christensen's return to work, constitutes an adverse employment action under the

18

ADA. *See Sallis v. University of Minnesota*, 408 F.3d 470, 476 (8th Cir. 2005) ("An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage.").

UP also does not contest in its briefing on appeal that Christensen was "disabled" as defined by the ADA. Under the ADA, an individual has a "disability" when being "regarded as having such an impairment." 42 U.S.C. § 12102(1). "An employer who terminates an employee . . . believing that the employee will pose a safety risk to himself or others if he were suddenly to lose consciousness, has regarded the individual as disabled."[4] 29 C.F.R. § Pt. 1630, App. Section 1630.2(l). Christensen has demonstrated sufficient evidence to show that UP regarded Christensen as disabled. First, Dr. Holland's stated in a May 31, 2016, certification that Christensen "has been disabled from performing his/her regular occupation . . . due to the following condition(s): stroke." App.Vol. 3 at 645, R. Doc. 62, at 28. Ultimately, Dr. Holland imposed job restrictions that barred Christensen's return to work because Dr. Holland, explicitly, regarded Christensen as "permanently disabled from his...regular occupation." App.Vol. 3 at 497, R. Doc. 51-5, at 131.

---

[4] Note that the regulation goes on to explain, "[w]hether the employer has a defense (*e.g.*, that the employee posed a direct threat to himself or coworkers) is a separate inquiry." 29 C.F.R. § 1630.2(l).

### ii. After over 10 years working for UP, Christensen was without a doubt a qualified individual under 29 C.F.R. § 1630.2(m).

UP's argument that Christensen is not qualified is entirely based upon the disputed assertion that he was "'not able to safely perform an essential function of [the] job.'" Appellant's Br. at 47 (*quoting McAllister v. Innovation Ventures, LLC,* 983 F.3d 963, 969 (7th Cir. 2020)). This argument is misplaced as "the question of whether [an employee] can perform his job safely, so as to be qualified for the position is not part of a plaintiff's prima facie case but goes to whether the Railroad can prevail on its direct-threat defense." *See Sanders,* 2021 WL 4783629 at *8-9. "The legislative history of the ADA also supports the premise that '[t]he plaintiff is not required to prove that he or she poses no risk." *Id.* at 572 (*citing Nunes v. Wal-Mart Stores, Inc.,* 164 F.3d 1243, 1247 (9th Cir. 1999)).

A qualified individual is one who both (1) "satisfies the requisite skill, experience and other job-related requirements of the employment position" and (2) "can perform the essential functions of such position." 29 C.F.R. § 1630.2(m); *see also* 42 U.S.C. § 12111(8). It is undisputed that Christensen had the skills, experience, and education that UP required conductors to have. In fact, the court found Christensen to be highly qualified for his position. App.Vol. 8 at 1756, R. Doc. 67, at 1. UP hired Christensen as a conductor in 2004, and he worked in that position through 2015. App.Vol. 3 at 627, R. Doc. 62, at 10. A reasonable jury could easily conclude that Christensen was qualified to perform the essential functions of the

20

conductor position. *Id.* Further, Dr. Call, Christensen's neurologist, testified specifically that Christensen could perform all the physical and mental tasks of the conductor position, just as he had done before his stroke, including all essential functions of the conductor position outlined in the job description. App.Vol. 3 at 634, R. Doc. 62, at 17.

UP improperly cites the Seventh Circuit case *McAllister*, suggesting whether an employee is "able to safely perform an essential function of his job" is part of the employee's qualified individual case. *McAllister* is factually distinguishable as the plaintiff in that case was "totally disabled" and "unable to perform 'any & all' job functions...." *McAllister v. Innovation Ventures, LLC.*, 983 F.3d at 968. Unlike in *McAllister* where the plaintiff was unable to perform any job functions, Dr. Call testified specifically that Christensen could perform all the physical and mental tasks of his conductor position, just as he had done before his stroke, including every essential function of the conductor position as outlined in the job description. App.Vol. 3 at 634, R. Doc. 62, at 20.

Critically, UP offers no substantive argument challenging Christensen's possession of the necessary skills, experience, or qualifications for the conductor position. The record demonstrates that Christensen successfully performed all job functions for many years and meets the qualified individual standard under the ADA.

Appellate Case: 25-2173     Page: 28     Date Filed: 11/26/2025 Entry ID: 5582692

UP's reliance on speculative safety concerns, rather than objective job-related criteria, fails to prove its point.

### iii.     *Like in Sanders, causation has been established here.*

The analysis then turns to causal connection. *See Evans*, 996 F.3d 545. This issue is controlled by the *Sanders* decision. In that case, UP began a fitness-for-duty evaluation on its employee who suffered a brief cardiac arrest, was resuscitated, underwent a successful operation, and fully recovered. *Sanders*, 108 F.4th at 1059. As in *Sanders*, here, UP imposed on Christensen restrictions that in effect ended his career. *Id.* at 1060. Sanders won a substantial jury verdict on his ADA claim. UP appealed the denial of its motion for judgment as a matter of law. This Court summarily rejected UP's argument and noted that causation was satisfied because "[t]he evidence showed that [UP] stopped Sanders from working as a foreman general because it believed he had diminished cardiovascular health, which is an impairment under the ADA." *Id.* at 1061.

UP fails at drawing any meaningful distinction between its conduct in this case and in *Sanders*. Knowing this is a problem, UP argues that in *Sanders*, the plaintiff suffered a "present physiological impairment", whereas here UP imposed work restrictions on Christensen "because of the risk of future potential sudden incapacitation." Appellee's Br. at 36. This is beyond disingenuous as UP argued to this Court in *Sanders* that it "did not restrict Sanders 'because of' a health condition,

22

but the risks correlated with Sanders' deficient aerobic fitness in a physically demanding job." Opening Br. for Appellant at 46, *Sanders v. Union Pac. R.R. Co.,* (8th Cir. 2022) (No. 22-2863).

This Court found that argument unpersuasive, holding that "Sanders satisfied the third element in this case because 'the defendant acknowledges relying on the plaintiff's [impairment] in reaching the employment decision.'" *Sanders,* 108 F.4th at 1062 *quoting Norcross v. Sneed,* 755 F.2d 113, 116 (8th Cir. 1985). There is no dispute that UP imposed the 5-year restriction on Christensen because Dr. Holland regarded him as having an unacceptable increased risk of future seizures following his stroke. App.Vol. 3 at 645, R. Doc. 62, at 28. This evidence satisfies the causal connection element.

          *iv.*    *Compelling evidence reveals pretext in UP's employment restrictions against Christensen.*

UP's only claimed non-discriminatory reason for imposing work restrictions was because of Christensen's purported and disputed safety risk. UP's claim of a safety risk cannot qualify as a "legitimate, non-discriminatory reason." *See e.g. Cushman v. Union Pacific R.R. Co.,* No. 8-23-CV-196, 2024 WL 1094703, at *7 (D. Neb. Mar. 12, 2024) ("[D]iscriminating based on a disability's perceived safety risks is discriminating based on disability"); *Sanders v. Union Pac. R.R. Co.,* No. 4:20-CV-3023, 2021 WL 4783629, at *9 (D. Neb. Oct. 7, 2021) (rejecting claim that safety

23

concerns resulting from an employee's health condition qualify as a legitimate, non-discriminatory rationale).

Under Eighth Circuit precedent, plaintiffs can establish pretext in any number of ways, including temporal proximity, a change in attitude toward the employee, proof that the employer's rational has no basis in fact, or inconsistent application of policy, among other evidence. *See Reeves, v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000); *see also Anderson v. KAR Glob.*, 78 F.3d 1047, 1051 (8th Cir. 2023); *E.E.O.C. v. Prod. Fabricators, Inc.*, 763 F.3d 963, 969 (8th Cir. 2014); *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010); *Hudson v. Norris*, 227 F.3d 1047, 1051 (8th Cir. 2000); *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 867 (8th Cir. 2006).

Here, at least 5 facts demonstrate pretext. First, UP arbitrarily extended the restriction period to five years, even though Christensen met all return-to-work conditions after one year, citing only its misguided interpretation of the withdrawn 2014 FMCSA Handbook. Second, even if the Handbook could be reasonably applied, it only suggested a 5-year restriction period for those at an increased risk for seizures on an on-going basis. UP did not assess whether Christensen was at an increased risk—let alone a significant risk—of seizure in 2016, 2018, or 2020. Third, in a marked reversal, UP now agrees in its brief that risk of seizure is "impossible" to quantify for Christensen. *See* Appellee's Br. at 31. Fourth, Christensen received his CDL, despite his prior stroke, after examination by a FMCSA medical examiner in

24

2016, demonstrating that UP's claim that Christensen the FMCSA standards prevented his return, unreasonable. Fifth, Christensen three times to return to work. These attempts and UP's repeated failures to honor its promises, demonstrate a shifting sea of reasons to terminate Christensen from his job. *See Reeves*, 530 U.S. at 147-148 (false explanations can be powerful evidence of pretext).

UP argues that it prevails on the pretext question because it "need not, in the end, be correct if the employer honestly believed the asserted grounds at the time of the [adverse action]." *See* Appellee's Br. at 52 (*citing McNary v. Schreiber Foods, Inc.,* 535 F.3d 765, 769 (8th Cir. 2008)). This is misleading as the issue in *McNary* dealt with whether an employee committed a separate rule violation for sleeping on duty. *Id.* Christensen did not break a company rule. Rather, UP's only explanation for removing Christensen from service was Christensen's stroke and UP's blanket policy.

In the face of all this evidence of pretext, UP argues, "a plaintiff cannot show pretext merely by challenging his employer's underlying medical opinions or conclusions." *Id.* Christensen does much more than simply challenge one medical opinion; he also points to evidence of shifting explanations, inconsistent applications of policy, and arbitrary policy changes—the exact evidence the law requires. Further, despite assurances that he could return to work after one year and later after five years,

Appellate Case: 25-2173     Page: 32     Date Filed: 11/26/2025 Entry ID: 5582692

UP ultimately never allowed him to return, repeatedly failing to honor its promises or make any genuine attempt to reinstate him following its shifting waiting periods.

UP points to no evidence that Christensen's actual job performance was affected or diminished in any way like the employees in the cases it relies on. Instead, UP's claim is that Christensen poses some "safety risk" that is "impossible" to quantify. *See* Appellee's Br. at 40. And it bears repeating: "[w]hether the employer has a defense (*e.g.,* that the employee posed a direct threat...) is a separate inquiry." 29 C.F.R. § 1630.2(l). For these reasons, Christensen can easily establish pretext for what has amounted to UP's permanent job restriction.

## CONCLUSION

The District Court erred in granting summary judgment on UP's fact intensive direct-threat affirmative defense. Denial of summary judgment on UP's defense does not mean that Christensen will automatically prevail on the merits nor that a jury will find UP liable. This case should be remanded for trial, so that a jury can properly weigh this highly disputed record.

Appellate Case: 25-2173     Page: 33     Date Filed: 11/26/2025 Entry ID: 5582692

Date: November 26, 2025

Respectfully submitted,

s/James H. Kaster
James H. Kaster
NICHOLS KASTER, PLLP
4700 IDS Center
80 S. 8th Street
Minneapolis, MN 55402
(612) 256-3200
kaster@nka.com

*Counsel for Plaintiff-Appellant
Ross Christensen*

Appellate Case: 25-2173    Page: 34    Date Filed: 11/26/2025 Entry ID: 5582692

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 6,219 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font. This brief complies with the virus scan requirements required by Local Rule 28A(h)(2) and is virus-free.

Date: November 26, 2025                     s/James H. Kaster
                                            James H. Kaster

Appellate Case: 25-2173     Page: 35     Date Filed: 11/26/2025 Entry ID: 5582692

# CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Eighth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

Date: November 26, 2025

s/James H. Kaster
James H. Kaster

29

Appellate Case: 25-2173    Page: 36    Date Filed: 11/26/2025 Entry ID: 5582692